## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

MORTON GROVE                          )
PHARMACEUTICALS, INC.                 )
                                      )
                 Plaintiff,   )
                                      )     No: 06-CV-3815
     v.                            )
                                      )     Judge Bucklo
THE NATIONAL PEDICULOSIS              )     Magistrate Judge Mason
ASSOCIATION, INC., ECOLOGY            )
CENTER, INC., JOHN FLIEGEL, MD,       )     **JURY TRIAL DEMANDED**
WILLIAM B. WEIL, MD,                  )
                                      )
             Defendants.   )
                                      )

## AMENDED COMPLAINT

Plaintiff, Morton Grove Pharmaceuticals, Inc. ("Morton Grove"), by and through its attorneys, Winston & Strawn LLP, for its Amended Complaint against the National Pediculosis Association, Inc., (the "NPA"), the Ecology Center, Inc. (the "Ecology Center"), John Fliegel, M.D., William B. Weil, M.D. (collectively, "Defendants") states:

### Nature of Action

1.    This is an action brought to redress false, misleading and defamatory statements and advertisements regarding two FDA-approved drugs—Lindane Lotion and Lindane Shampoo (collectively "Lindane")—prescribed for the treatment of lice and scabies.

2.    Plaintiff Morton Grove is a pharmaceutical company. Defendant NPA is the distributor of the LiceMeister® Comb, which competes with Lindane. While the NPA refers to itself as an "agency dedicated to protecting children from the

misuse and abuse of potentially harmful lice and scabies pesticidal treatments" and masquerades as a health organization, upon information and belief, the NPA does not employ a single physician or licensed health professional. It is a competitor of Morton Grove Pharmaceuticals. In fact, in 2003, 97% of the NPA's revenues were derived through the sale of LiceMeister® combs. Defendant Ecology Center is an environmental action group. Defendants Fliegel and Weil are two Michigan physicians working closely with the Ecology Center.

3.     Morton Grove brings this action against the NPA for violation of the Lanham Act, trade disparagement, violation of the Illinois Deceptive Trade Practices Act, and defamation. Morton Grove brings this action against the Ecology Center, Fliegel, and Weil for trade disparagement, violation of the Illinois Deceptive Trade Practices Act, and defamation.

4.     Morton Grove is the only United States manufacturer and distributor of Lindane. As such, Defendants' statements regarding Lindane necessarily refer to Morton Grove and its products.

5.     Lindane has been approved by the Food and Drug Administration ("FDA") as a safe and effective prescription therapy for the treatment of lice and scabies. These infections, some of which are sexually transmitted, are increasingly resistant to certain treatments and remain important public health problems that affect tens of millions of Americans each year.

6.     In the 50+ years that Lindane has been on the market, subject matter experts working with the FDA and the Environmental Protection Agency ("EPA")

have reviewed the weight of medical and scientific evidence on Lindane and repeatedly determined that these medications are safe and effective when used as directed. The FDA has consistently maintained its position that Lindane's benefits outweigh its risks—a factor for all medications—and should remain an option for physicians. Petitions, including one filed by the NPA, to ban Lindane have repeatedly been denied and determined to be without merit. Similarly, the EPA has concluded that pharmaceutical Lindane poses no significant risk to humans or the environment when used as currently labeled. The public health benefits of Lindane medications are further supported by the recommendations of the Centers for Disease Control and Prevention ("CDC"), which sets practice standards for the medical community and includes Lindane in their *Sexually Transmitted Disease Treatment Guidelines* for the management of scabies and pubic lice, consistent with the FDA-approved prescription labeling for Lindane Lotion and Lindane Shampoo. Moreover, in 2003 important advancements to the packaging and prescription of Lindane medications manufactured and sold in the United States served to mitigate the potential risks associated with product misuse and further enhanced their public safety.

7.     Lindane Lotion and Shampoo are named after their active ingredient, Lindane. Lindane, the active ingredient, was historically used primarily in agricultural context—more than 99% of lindane was used agriculturally, while less than 1% was used pharmaceutically. The dangers associated with occupational exposure to agricultural lindane have been widely and unfavorably reported. These

dangers differ vastly from those associated the short-term topical application of Lindane medications to the hair and skin—just 4 minutes in the case of head lice. Nevertheless, Defendants have irresponsibly mixed and matched "agricultural" lindane science in an effort to defame and disparage pharmaceutical Lindane.

8.    Despite this well-documented scientific, medical and regulatory history, Defendants have launched an attack campaign on Lindane.  Defendants swap agricultural and pharmaceutical research, selectively quoting and/or misstating findings from studies relating to the agricultural use of lindane, and widely disseminate false, misleading, and defamatory statements about the safety profile and effectiveness of Lindane.  These statements have negatively impacted the sale of these FDA-approved prescription medications and Morton Grove's business.

<u>Parties</u>

9.    Morton Grove, a Delaware corporation, is a pharmaceutical company with its principal place of business in Morton Grove, Illinois.

10.    Upon information and belief, the NPA, a Massachusetts corporation, is based in Needham, Massachusetts.  The NPA widely distributes information and products nationally, including in Illinois, through its interactive website [www.headlice.org](www.headlice.org).  The NPA sells its products nationally and has profited from the sales of the LiceMeister® comb in Illinois.

11.    The Ecology Center, a Michigan corporation, is based in Ann Arbor, Michigan.  The Ecology Center actively solicits donors by mail and distributes "fact

sheets" and "newsletters" nationally, including in Illinois. In fact, the Ecology Center recently sent a letter defaming Lindane and seeking donations to fund its campaign against Lindane to twenty Illinois residents, including to at least one Illinois physician. As a result of its vast efforts to cultivate Illinois donors in its campaign against Lindane, the Ecology Center has raised money from eleven Illinois residents since December 2003. Finally, the Ecology Center has also spent $2,900 in business and travel expenses in Illinois since February 2004.

12. Upon information and belief, John Fliegel, M.D. is a resident of the State of Michigan.

13. Upon information and belief, William B. Weil, M.D. is a resident of the State of Michigan.

## Jurisdiction & Venue

14. This Court has jurisdiction over the subject matter of this action based upon diversity of citizenship and because Morton Grove has suffered in excess of $75,000 in damages, exclusive of interests and costs, pursuant to 28 U.S.C. § 1332.

15. This Court also has jurisdiction over the subject matter of this action based upon the federal question presented by the Lanham Act, 15 U.S.C. § 1125(a) *et seq.*, pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

16. The Court has jurisdiction over the Defendants based on their substantial contacts with the State of Illinois, including their commission of tortious acts which caused injury in the State of Illinois.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## Factual Allegations

## I.     Background on Lindane

18.     Morton Grove is the sole United States distributor of Lindane Shampoo and Lindane Lotion.

19.     Lindane Lotion and Lindane Shampoo are prescription medications for the treatment of scabies, pubic lice, and head lice.  These conditions are highly contagious public health conditions, some of which are sexually transmitted.  These diseases affect adolescents, adults, and children, causing significant morbidity that impacts tens of thousands of Americans.

20.     Lindane medications have been used successfully in clinical practice for more than 50 years.

21.     The FDA and the EPA, after numerous exhaustive reviews of the weight of evidence on Lindane, have concluded that currently approved medical uses of Lindane do not pose a significant risk to public health or safety.  In fact, Lindane has been reviewed by the FDA more than a dozen times beginning in 1951, and with each review the "FDA has determined that lindane products have benefits that outweigh risks when used as directed."  Woodcock, J. (Director, FDA Center for Drug Evaluation and Research), "Re: Docket No. 95P-0018/cP," Correspondence to Jill A. Cashen, Cancer Prevention Coalition, May 13, 1997;  U.S. Food and Drug Administration, Lindane Assessment Memorandum (2003), available at: http://www.fda.gov/cder/drug/infopage/lindane/lindanememoassessment.pdf.     In

2001, the EPA even downgraded the cancer classification of Lindane to the same low-level rating as first-line, over-the-counter medications, and concluded that no additional cancer risk assessments of Lindane in humans were necessary.

22. The Centers for Disease Control ("CDC") and the American Academy of Pediatrics ("APA") both recommend pediculicidal treatments—which Lindane is considered—over wet combing for the management of head lice, as combing leads to dramatically lower rates of clinical cure compared with chemical treatments.

## II. The NPA Attempts to Increase Sales of the LiceMeister® by Distributing False and Defamatory Science Regarding Lindane

23. Blindly ignoring well-established science and the positions of the FDA, EPA, CDC, and APA on Lindane, the NPA has launched an attack campaign against Lindane in the hopes that it can increase sales of the LiceMeister® comb. This for-profit campaign blatantly ignores all standards for comparative marketing, including those promulgated by the FDA's Division of Drug Marketing and Advertising, which prohibit all such advertisements <u>unless</u> the representations made in those advertisements are supported by <u>substantial evidence</u> derived from adequate and well-controlled studies. The NPA's false advertising claims and other defamatory statements referenced *infra* are attached as Exhibit A.

24. In an effort to maximize profits, the NPA has falsely claimed that the "symptoms" from "exposure" to Lindane include:

> acute renal failure with azotemia, ADD/ADHD[,] anxiety, autism, atonia, agranulocytosis, aplastic anemia, anorexia, apprehensive mental state, behavior-mood disturbances, bullae, cancer, cardiac arrhythmias, clumsiness, coma, confusion, conjunctivitis, convulsions, cough, cyanosis, death, dermatitis, diaphoresis, diarrhea,

7

disorientation, dizziness, dyspnea, emotional lability, excitement, excessive hair growth, fast heartbeat, fatigue, fever, giddiness, grinding teeth, headaches, heart palpitations, hematuria, hyperirritability, hypersensitivity, incoordination, kidney damage, liver damage, liver enlargement, loss of appetite, mania, mental retardation, muscle cramps, muscle spasms, muscle tremors, nausea, nervousness, oliguria, pallor, paraesthesia, paresis, paresthesia, porphyria, proteinuria, pulmonary edema, restlessness, respiratory failure, seizures, shaking, sweating, tachycardia, tearing, thirst, trouble breathing, trouble swallowing, urticaria, vertigo, vomiting, weakness, wheezing, elevated LDH, GOT, GPT, alkaline phosphatase, ALT, AST enzymes.

25. In fact, the overwhelming majority of these so-called symptoms or side-effects nowhere appear on the FDA-approved prescription label for Lindane Lotion or Lindane Shampoo and are not reflected in the events reported to the FDA through their Adverse Event Reporting System Database.

26. Apart from ignoring the symptoms on the FDA-approved prescription label, the NPA has criticized the accuracy of the warning and the safety profile of Lindane, claiming Lindane is "sold or prescribed without adequate warnings or guidance on use. It is applied to the scalp and **overuse is encouraged**." (emphasis supplied). In fact, Morton Grove and the FDA have taken significant steps to discourage overuse, including (1) adding a boxed warning, (2) issuing a public health advisory, (3) repackaging the product in small, single-use bottles, and (4) distributing legally required patient guides with every Lindane prescription.

27. In addition to mischaracterizing the safety profile of Lindane, the NPA has also misclassified its regulatory status, claiming "Illinois Bans Lindane" and "Illinois Banned Lindane." The truth is that Illinois has not banned Lindane.

28.     Entirely failing to understand the public health benefit of Lindane and its place as a second-line prescription therapy for a number of important public health concerns, the NPA also states: "When these [first-line] treatments fail, the guidelines **unfortunately** recommend the prescription pesticides malathion and Lindane. **There are health risks inherent with the use of pesticides on children and these risks increase dramatically when you follow one chemical treatment with another**." There is no credible scientific evidence to support the statement that "risks increase dramatically when you follow one chemical treatment with another." In fact, the Center for Disease Control and the American Academy of Pediatrics <u>recommend</u> the practice of using over-the-counter products first and then using Lindane if those are not effective. This practice, which is also recommended by the FDA, is implicit to the use of "second-line" medications like Lindane Lotion and Lindane Shampoo,

29.     The NPA's website also falsely claims that "the main source of lindane in sewers is from treatment of head lice and scabies and that a single treatment of lindane pollutes 6 million gallons of water." Like many of the NPA's other statements, this statement is scientifically unsubstantiated and runs counter to the conclusions drawn by subject matter experts working with the EPA. In fact, the EPA has repeatedly determined that the amount of pharmaceutical Lindane reaching water supplies is <u>insignificant</u> and even worst-case estimates show that if Lindane from pharmaceutical uses reached water supplies, Lindane levels would still be 67 to 333 times lower than the level considered safe by the EPA. These

findings are further reinforced by the results of large-scale water sampling studies conducted by the EPA and the U.S. Geological Survey.

30.     The NPA does not stop there in their efforts to "scare" consumers into using their product, the LiceMeister® comb; they also attempt to convince consumers that using Lindane medications cause cancer. For example, they note: "[T]he U.S. EPA classif[ies] lindane as a possible carcinogen" and "Lindane should be handled as a **CARCINOGEN WITH EXTREME CAUTION**." These statements, among many others, are blatantly false and not supported by the weight of scientific evidence or determinations published by the EPA, World Health Organization and other subject matter experts.

31.     Similarly the NPA notes: "Case-controlled research shows a significant association between the incidences of brain tumors in children with the use of lindane-containing lice shampoos." There, however, have been no established links between the use of Lindane and the development of cancer, despite more than 50 years of clinical use on adults and children. The "case-controlled" research cited by the NPA prompted a special review by the FDA that subsequently concluded: "[I]t was unlikely that the data in the Davie et al. study established any link between the increased incidence of childhood brain cancer and the use of Lindane 1% (Kwell) shampoo, and that there was no need to make any changes in the current labeling for Kwell."

32.     In a further effort to divert customers from Lindane to the LiceMeister® comb, the NPA's website also contains the following false statements and misleading "warnings":

- "Be Sure You Provide a Non-Chemical Choice For Your Children . . . Because it's not worth taking unnecessary risks when the bottom line will always be the manual removal of lice and nits."

- "Never resort to **dangerous remedies** such as lindane, kerosene, or pet shampoos."

- "When used for early detection and manual removal, the LiceMeister comb is the realistic and practical alternative to unnecessary and potentially harmful pesticides.  The LiceMeister is the safe and cost effective way to win the war against head lice and keep the kids in school safe, lice and nit free."

- Do not recommend products containing lindane.  The Food and Drug Administration (FDA) regards it as potentially more toxic than all other pediculicidal choices and no more effective."

## III.     The Ecology Center and Drs. Fliegel and Weil Have Also Defamed Morton Grove and Lindane

33.     Using identical or similarly misleading "junk" science, the Ecology Center and Drs. Fliegel and Weil have also intentionally and maliciously launched a false, misleading and defamatory attack campaign on Morton Grove and Lindane.  This campaign has included the wide dissemination of false and misleading "fact sheets," newsletters, letters soliciting donations, and statements on the Ecology Center's website.

34.     As compiled in Exhibit B, Fliegel has published at least the following false statements to third parties:

    a.     "Worldwide resistance to Lindane has been reported for many years (including in the United States) for both lice and scabies—

this means that the organisms have become immune to the chemical."

b.  "The low effectiveness of Lindane is a concern because patients may use the product for longer than indicated, resulting in potentially dangerous absorption and toxic effects."

c.  "Lindane is not recommended for treatment of pubic lice."

d.  "Use of an FDA approved lice comb is an effective, non-chemical approach to lice treatment . . . . Thorough combing is emerging as the treatment of choice . . ."

e.  "The risk for toxic effects is estimated to be 40-400 times lower for permethrin cream than Lindane lotion."

f.  Lindane is "classified as a 'possible carcinogen' by the EPA."

g.  "In the FDA's Adverse Event Reporting System, 20% of those reporting health effects (hospitalization, disability, and death) due to Lindane used the product according to the directions."

h.  "Due to its toxicity, the FDA recommends not using Lindane to treat individuals weighing less than 110 pounds—this corresponds to most children on whom lindane is used."

i.  "The most effective and least toxic head lice and scabies drug is permethrin."

j.  "Lindane is acutely toxic to the nervous system and can cause symptoms such as seizures, numbness, motor restlessness, anxiety, tremors, cramps and unconsciousness."

k.  "Fourteen other deaths have been <u>attributed</u> to Lindane, but have not been confirmed. All of these 14 deaths involved topical application; in 5 cases, use was in accordance with the directions."

l.  "Exposure to Lindane can also cause effects on the blood, immune, and nervous systems, as well as the liver and kidneys."

m.  "Studies have shown a positive association between Lindane use and increased risk of childhood leukemia and brain cancer."

n.  "According to the CDC, unintentional ingestions of Lindane were more likely to produce illness (such as vomiting, cramps,

and seizures) than all three other medications combined (permethrin, pyrethrin, and malathion)."

o.    Lindane is "the least effective treatment."

p.    "Recent cure rates for Lindane have been reported as low as 17%."

q.    "Will a phase out lead to consumers purchasing Lindane from Canada? No. Although obtaining Lindane does not require a prescription in Canada, it is only available behind-the-counter and requires a pharmacist's recommendations (and possibly a referral from a physician)."

r.    "One dose of Lindane can contaminate 6 million gallons of drinking water."

s.    "ATSDR ranks Lindane 32 of 275 in the list of CERCLA priority pollutants due to its toxicity, potential exposure, and frequency of occurrence at National Priority Sites."

t.    "Lindane is a chlorinated pesticide (in the same group as DDT) used to treat lice and scabies. It is also used in agriculture as seed treatment for barley, corn, oats, rye, and wheat."

u.    "A phase out of pharmaceutical Lindane will likely prevent long-term neurologic impairment in some patients, which would cost family members and society a large amount of resources."

v.    "Lindane is no longer registered by the EPA for veterinary use in the United Sates due to its potential to cause cancer and birth defects."

35.    As compiled in Exhibit C, Weil has published at least the following false statements to third parties:

a.    "Worldwide resistance to Lindane has been reported for many years (including the United States) for both lice and scabies—this means that the organisms have become immune to the chemical."

b.    "The low effectiveness of Lindane is a concern because patients may use the product for longer than indicated, resulting in potentially dangerous absorption and toxic effects."

c.      "Lindane use is not recommended for treatment of pubic lice."

d.      "Use of an FDA approved lice comb is an effective, non-chemical approach to lice treatment . . . . Thorough combing is emerging as the treatment of choice . . . "

e.      "The risk for toxic effects is estimated to be 40-400 times lower for permethrin cream than Lindane lotion."

f.      Lindane is "classified as a 'possible carcinogen' by the EPA."

g.      "In the FDA's Adverse Event Reporting System, 20% of those reporting health effects due to Lindane used the product according to the directions."

h.      "Due to its toxicity, the FDA recommends not using Lindane to treat individuals weighing less than 110 pounds—this corresponds to most children on whom Lindane is used."

i.      "The most effective and least toxic head lice and scabies drug is permethrin."

j.      "Lindane is acutely toxic to the nervous system and can cause numbness, motor restlessness, anxiety, tremors, cramps and unconsciousness."

k.      "Fourteen other deaths have been attributed to Lindane, but have not been confirmed.  All of these 14 deaths involved topical application; in 5 cases, use was in accordance with the directions."

l.      "Chronic oral exposure [to Lindane] includes effects on the blood, immune, and nervous systems, and the liver and kidneys."

m.      "Studies have shown a positive association between Lindane use and increased risk of childhood leukemia and brain cancer."

n.      "According to the CDC, unintentional ingestions of Lindane were more likely to produce illness (such as vomiting, cramps, and seizures) than all three other medications combined (permethrin, pyrethrin, and malathoin)."

o.      Lindane is considered "the least effective treatment."

p. "Recent cure rates for Lindane have been reported as low as 17%."

q. "Will a phase out lead to consumers purchasing Lindane from Canada? No. Although obtaining Lindane does not require a prescription in Canada, it is only available behind-the-counter and requires a pharmacist's recommendations (and possibly a referral from a physician)."

r. "One dose of Lindane can contaminate 6 million gallons of drinking water."

s. "ATSDR ranks Lindane 32 of 275 in the list of CERCLA priority pollutants due to its toxicity, potential of exposure, and frequency of occurrence at National Priority Sites."

t. "Lindane is a chlorinated pesticide (in the same group as DDT) used to treat head lice and scabies. It is also used in agriculture as seed treatment for barley, corn, oats, rye, and wheat."

u. "A study in the journal *Clinical Infectious Diseases* states that "the availability of efficacious agents with more favorable safety profiles has virtually eliminated its [Lindane] use for head lice in the United States."

v. "A phase out of pharmaceutical Lindane will likely prevent long-term neurologic impairment in some patients, which would cost family members and society a large amount of resources."

w. "Lindane is no longer registered by the EPA for veterinary use in the United Sates due to its potential to cause cancer and birth defects."

36. As compiled in Exhibit D, the Ecology Center has published at least the following false statements to third parties:

a. "Worldwide resistance to Lindane has been reported for many years (including the United States) for both lice and scabies-- this means that the organisms have become immune to the chemical."

b. "The low effectiveness of Lindane is a concern because patients may use the product for longer than indicated, resulting in potentially dangerous absorption and toxic effects."

15

c.    "Lindane use is not recommended for treatment of pubic lice."

d.    "Use of an FDA approved lice comb is an effective, non-chemical approach to lice treatment . . . . Thorough combing is emerging as the treatment of choice…"

e.    "The risk for toxic effects is estimated to be 40-400 times lower for permethrin cream than Lindane lotion."

f.    Lindane is "classified as a 'possible carcinogen' by the EPA."

g.    "In the FDA's Adverse Event Reporting System, 20% of those reporting health effects due to Lindane used the product according to the directions."

h.    "Due to its toxicity, the FDA recommends not using Lindane to treat individuals weighing less than 110 pounds--this corresponds to most children on whom Lindane is used."

i.    "The most effective and least toxic head lice and scabies drug is permethrin."

j.    "Lindane is acutely toxic to the nervous system and can cause numbness, motor restlessness, anxiety, tremors, cramps and unconsciousness."

k.    "Fourteen other deaths have been attributed to Lindane, but have not been confirmed.  All of these 14 deaths involved topical application; in 5 cases, use was in accordance with the directions."

l.    "Chronic oral exposure [to Lindane] includes effects on the blood, immune, and nervous systems, and the liver and kidneys."

m.    "Lindane is easily absorbed into fat and neural tissue and has caused neurotoxicity and anemia in patients."

n.    "Lindane resistance among head lice has been reported in the United States, United Kingdom, the Netherlands, and Panama."

o.    Lindane is considered "the least effective treatment."

p.   "Recent cure rates for Lindane have been reported as low as 17%."

q.   "Will a phase out lead to consumers purchasing Lindane from Canada? No. Although obtaining Lindane does not require a prescription in Canada, it is only available behind-the-counter and requires a pharmacist's recommendations (and possibly a referral from a physician)."

r.   "One dose of Lindane can contaminate 6 million gallons of drinking water."

s.   "ATSDR ranks Lindane 32 of 275 in the list of CERCLA priority pollutants due to its toxicity, potential of exposure, and frequency of occurrence at National Priority Sites."

t.   Lindane is a chlorinated pesticide (in the same group as DDT) used to treat head lice and scabies. It is also used in agriculture as seed treatment for barley, corn, oats, rye, and wheat."

u.   "A study in the journal *Clinical Infectious Diseases* states that "the availability of efficacious agents with more favorable safety profiles has virtually eliminated its [Lindane] use for head lice in the United States."

v.   "This in vitro study compared the efficacy of various pediculicides and ovicides at determined time intervals over three hours. Lindane was least effective of the six products tested, killing only 61% of lice and 24% of eggs in three hours. . . . When compared to the results of a similar study done in 1984, the recent study showed Lindane to be much less effective in killing lice and nits. This suggests a possible increase in resistance to Lindane among lice."

w.   "The authors 'strongly recommend its removal from the market' due to very poor pediculocidal and ovicidal effectiveness, potential toxic effects on nervous system, resistance, and environmental contamination."

x.   "The use of pediculocidal shampoos (including Lindane) was associated with increased risk of childhood leukemia, with odds ratios of 1.5 (95% CI 0.9 to 2.5) for use of pesticide in one head lice episode and 1.9 (95% CI 1.1 to 3.3) for use of pesticide in two or more episodes."

y.  "Among reports in the Toxic Exposure Surveillance System (TESS) database, unintentional ingestion of Lindane was more likely to produce illness than unintentional ingestion of the other three alternative head lice medications combined. . . . An example of unintentional ingestion:  A boy age 3 ingested 1 teaspoon of 1% Lindane shampoo and the mother induced vomiting.  The boy collapsed and had a tonic-clonic seizure lasting 4-5 minutes and was rushed to the hospital.  He was released 3 hours later in stable condition."

z.  "A phase out of pharmaceutical Lindane will likely prevent long-term neurologic impairment in some patients, which would cost family members and society a large amount of resources."

aa.  "Lindane is no longer registered by the EPA for veterinary use in the United Sates due to its potential to cause cancer and birth defects."

## IV.  As a Result of the NPA, the Ecology Center, and Drs. Fliegel and Weil's Actions, Morton Grove Has Been Damaged

37.  As a result of the Defendants' foregoing statements, Morton Grove has incurred financial and reputational injury to its business, including lost past, present, and future Lindane Lotion and Lindane Shampoo sales and diminished goodwill.  Specifically, Defendants' false, misleading and defamatory statements directly and proximately caused a decline in the sales of Lindane.  As a result of Defendant's statements, Lindane sales have decreased approximately 23%, with a total loss of more than $9.3 million between January and November 2006.  Further, Defendant's statements have precluded Morton Grove from making certain new sales of Lindane into emerging markets, and caused consumers and physicians to falsely question the safety and effectiveness of Lindane.

## V.  Defendants' Statements Were Made Intentionally & Maliciously

38.     In light of the statements' significant impact on Morton Grove's business, Morton Grove sent each Defendant a letter (attached as Group Exhibit E) indicating that they were publishing defamatory statements about Lindane which were injuring Morton Grove.   These letters detailed each such false statement, provided factual support for why each statement was false, and gave Defendants ample time to retract such statements.

39.     Despite this opportunity, Defendants failed to retract their false and defamatory statements and continue to allow the publication and dissemination of these false statements.

40.     Defendants' failure to retract and continued publication of these false statements, despite knowing their falsity, demonstrates Defendants' intent to inflict economic harm on Morton Grove.   It also demonstrates Defendants' intention to continue to harm Morton Grove in the future.

## COUNT I
## (AGAINST THE NPA)
## LANHAM ACT (15 U.S.C. § 1125(a))

41.     Morton Grove repeats and re-alleges the allegations set forth in Paragraphs 1 through 40 of this Complaint.

42.     The NPA sells a lice treatment product called the LiceMeister®, which it promotes as an alternative to Lindane medications.

43.     Upon information and belief, the NPA has never performed, prior to publication of the aforementioned statements, any tests comparing the qualities and

characteristics of the LiceMeister® comb and Lindane, or evaluating the qualities and characteristics of Lindane.

44. The NPA's statements, through its website and sales of its product, have been made in interstate commerce and were, are, and continue to be made intentionally and willfully.

45. The NPA's advertising claims set forth above are false and misleading descriptions and representations of fact about Lindane. In addition, these statements are misleading in context and violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46. The NPA's false and misleading advertising claims have deceived and have the tendency to deceive a substantial portion of the target audience for lice and scabies treatments.

47. The NPA's false and misleading advertising claims are material to consumers' purchasing decisions.

48. The NPA has caused its false and misleading advertising claims to enter into interstate commerce.

49. The NPA's false and misleading advertising claims have caused consumers to not purchase Lindane products. These claims have caused and are continuing to cause damage to Morton Grove's sales and market share and injury to Morton Grove's goodwill and business reputation, warranting an award of damages.

50. The NPA's false and misleading claims were made deliberately and willfully, and the NPA knew or should have known that these statements were false

and that the impact of its statements would be to reduce sales of Lindane. Therefore, Morton Grove seeks finding that this is an exceptional case, requiring an award of attorney fees to Morton Grove.

51. The NPA's continued use of false or misleading advertising claims is causing great, immediate, and irreparable injury to Morton Grove, thereby warranting an order granting preliminary and permanent injunctive relief.

## COUNT II
## (AGAINST ALL DEFENDANTS)
## DEFAMATION

52. Morton Grove repeats and re-alleges the allegations set forth in Paragraphs 1 through 51 of this Complaint.

53. Defendants published and communicated to third persons the statements regarding Lindane set forth in Paragraphs 24 through 36 above.

54. The statements regarding Lindane set forth in Paragraphs 24 through 36 are false and misleading.

55. When Defendants published and communicated these statements and refused to retract them, they did so negligently or intentionally.

56. As a result of Defendants' statements, Morton Grove suffered specific economic harm as detailed in Paragraph 37.

## COUNT III
## (AGAINST ALL DEFENDANTS)
## TRADE DISPARAGEMENT

57. Morton Grove repeats and re-alleges the allegations set forth in Paragraphs 1 through 56 of this Complaint.

58. Defendants published and communicated to third persons the statements regarding Lindane set forth in Paragraphs 24 through 36.

59. The statements regarding Lindane set forth in Paragraphs 24 through 36 are false and misleading.

60. Defendants have published and communicated these statements through the preparation and dissemination of "fact sheets" to physicians, letters to actual and potential donors, statements on websites, and other means.

61. When Defendants published and communicated these statements and refused to retract them, they did so with knowledge of their falsity or reckless disregard for their truth, and with the intent to inflict economic harm upon Morton Grove.

62. As a result of Defendants' statements, Morton Grove suffered specific economic harm as detailed in Paragraph 37.

## COUNT IV
### (AGAINST ALL DEFENDANTS)
### ILLINOIS DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510/2)

63. Morton Grove repeats and re-alleges the allegations set forth in Paragraphs 1 through 62 of this Complaint.

64. Defendants published and communicated to third persons the statements regarding Lindane set forth in Paragraphs 24 through 36.

65. The statements regarding Lindane set forth in Paragraphs 24 through 36 are false and misleading.

66. When Defendants published and communicated these statements and refused to retract them, they did so with knowledge of their falsity or reckless disregard for their truth, and with the intent to inflict economic harm upon Morton Grove. Specifically, prior to filing its Complaint, Morton Grove provided the Ecology Center specific scientific proof that the statements contained in Paragraphs 34 through 36 were false and misleading. Upon receiving this proof and the Complaint, the Ecology Center, agreeing that certain of these statements were false, informed Morton Grove that it was willing to retract certain of these statements and agreed to provide Morton Grove a copy of such retractions. These retractions have not been provided, and, upon information and belief, were never made. The Ecology Center's behavior in this regard is intentional, malicious, and aimed and injuring Morton Grove's business. Similarly, before filing this Amended Complaint, Morton Grove provided the NPA with specific scientific proof that its statements, contained above in Paragraphs 24 through 32, were false and misleading. The NPA did not respond to Morton Grove's letter.

67. These statements violated multiple sections of 815 ILCS 510/2, including subsections (2), (7), (8), and (12).

68. As a result of Defendants' statements, Morton Grove suffered specific economic harm as detailed in Paragraph 37.

**WHEREFORE,** Plaintiff, MORTON GROVE PHARMACEUTICALS, INC., requests this Honorable Court for the following relief:

A.     That Defendants be ordered to pay Morton Grove's actual and consequential damages in an amount in excess of $75,000 exclusive of interest and costs;

B.     An Order enjoining Defendants from further defaming Morton Grove and Lindane medications;

C.     An Order enjoining the NPA from further publishing its false and misleading advertising statements about Lindane medications;

D.     Treble Damages;

E.     Punitive Damages;

F.     Morton Grove's court costs and reasonable attorney's fees; and

G.     For such other and further relief as this Court deems equitable and just.

Dated:  February 6, 2007                          Respectfully Submitted,

                                                 MORTON GROVE
                                                 PHARMACEUTICALS, INC.


                                                 By:  ____s/ William C. O'Neil____
                                                       *One of its Attorneys*

W. Gordon Dobie
Timothy J. Rivelli
William C. O'Neil
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

## <u>CERTIFICATE OF SERVICE</u>

   The undersigned, an attorney, hereby certifies that he caused a copy of this **AMENDED COMPLAINT** to be served by electronic filing and messenger upon:

    Richard M. Waris
    James J. Spichen
    Pretzel & Stouffer, Chartered
    One South Wacker Drive - Suite 2500
    Chicago, Illinois 60606
    T: (312) 578-7404
    F: (312) 346-8242

in the manner indicated, on this 6th day of February 2007.

       By:   s/ William C. O'Neil____

W. Gordon Dobie
Timothy J. Rivelli
William C. O'Neil
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
(312) 558-5600