# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

MORTON GROVE                                  )
PHARMACEUTICALS, INC.                         )
                                              )
                          Plaintiff,          )
                                              )    No: 06-CV-3815
            v.                                )
                                              )    Judge Bucklo
THE NATIONAL PEDICULOSIS                      )    Magistrate Judge Mason
ASSOCIATION, INC., ECOLOGY                    )
CENTER, INC., JOHN FLIEGEL, MD,               )    **JURY TRIAL DEMANDED**
WILLIAM B. WEIL, MD,                          )
                                              )
                          Defendants.         )

## MORTON GROVE PHARMACEUTICALS, INC.'S
## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
## THE NATIONAL PEDICULOSIS ASSOCIATION'S MOTION TO DISMISS

**WINSTON & STRAWN LLP**

35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Morton Grove Pharmaceuticals, Inc.*

Dated: April 25, 2007

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.    Morton Grove Stated A Claim Under The Lanham Act.......................................................2

      A.    As A Competitor, Morton Grove Has Standing Under The Lanham Act ...............2

      B.    The NPA's Statements Are Advertisements............................................................3

II.   Morton Grove Stated A Claim For Defamation ..................................................................6

      A.    The NPA's Statements Are Defamatory *Per Se* ....................................................6

            1.    The NPA's Statements Are *Per Se* Defamatory Under Illinois Law..........6

            2.    The NPA's Statements Are Of And Concerning Morton Grove
                  And Its Products.....................................................................................7

      B.    The Innocent Construction Rule Cannot Save The NPA.......................................8

      C.    In The Alternative, The NPA's Statements Are Defamatory *Per Quod*................9

      D.    The NPA's Statements Are Not Scientific Opinion ............................................10

      E.    The NPA's Statements Are Not Protected By Any Qualified Privilege...............11

III.  Morton Grove Stated A Claim For Trade Disparagement.................................................13

IV.   Morton Grove Stated A Claim Under The Illinois Deceptive Trade Practices Act..........13

V.    The NPA Was Properly Joined To This Suit...................................................................14

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Achanzar v. Ravenswood Hosp.*,
  326 Ill. App. 3d 944, 762 N.E.2d 538 (1st Dist. 2001) ....................................................... 11, 12

*American Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*,
  820 F. Supp. 1072 (N.D. Ill. 1993) ........................................................................................ 4

*Appraisers Coal. v. Appraisal Inst.*
  845 F. Supp. 592 (N.D. Ill. 1994) .......................................................................................... 8

*Barry Harlem Corp. v. Kraff*,
  273 Ill. App. 3d 388, 652 N.E.2d 1077 (1st Dist. 1995) ........................................................ 7

*Becker v. Zellner*,
  292 Ill. App. 3d 116, 684 N.E.2d 1378 (2d Dist. 1997) ....................................................... 13

*Brown & Williamson Tobacco Corp. v. Jacobson*,
  713 F.2d 262 (7th Cir. 1983) ................................................................................................. 9

*Bryson v. News America Publ'n, Inc.*,
  174 Ill. 2d 77, 672 N.E.2d 1207 (1996) ........................................................................... 6, 7, 9

*Camp v. Gregory*,
  67 F.3d 1286 (7th Cir. 1995) ............................................................................................... 14

*Chicago Conservation Ctr. v. Frey*,
  40 Fed. Appx. 251 (7th Cir. 2002) ......................................................................................... 6

*Clarage v. Kuzma*,
  342 Ill. App. 3d 573, 795 N.E.2d 348 (3d Dist. 2003) ........................................................ 11

*Doe v. Smith*,
  429 F.3d 706 (7th Cir. 2005) ............................................................................................... 13

*Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*,
  805 F.2d 732 (7th Cir. 1986) ............................................................................................... 14

*Euromarket Designs, Inc., v. Crate & Barrel Ltd.*,
  96 F. Supp. 2d 824 (N.D. Ill. 2000) ....................................................................................... 4

*Faur v. Sirius Int'l Ins. Corp.*,
  391 F. Supp. 2d 650 (N.D. Ill. 2005) ..................................................................................... 2

*First Health Group Corp. v. BCE Emergis Corp.*,
  269 F.3d 800 (7th Cir. 2001) ................................................................................................. 4

*Gail Green Licensing & Design Ltd. v. Accord, Inc*,
  2006 WL 2873202 (N.D. Ill. Oct. 5, 2006)...........................................................2

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974).................................................................................................9

*Gordon & Breach Scientific Publishers S.A. v. Am. Inst. of Physics*,
  859 F. Supp. 1521 (S.D.N.Y. 1994).......................................................................4

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
  191 F.3d 813 (7th Cir. 1999) ..................................................................................5

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*,
  367 Ill. App. 3d 48, 853 N.E.2d 770 (1st Dist. 2006)......................................10, 13

*In re High Fructose Corn Syrup Antitrust Litig.*,
  293 F. Supp. 2d 854 (C.D. Ill. 2003) ...................................................................15

*Johnson & Johnson v. Carter-Wallace, Inc.*,
  631 F.2d 186 (2d Cir. 1980).....................................................................................3

*Kuwik v. Starmark Star Mktg. & Admin., Inc.*,
  156 Ill. 2d 16, 619 N.E.2d 129 (1993) ..................................................................11

*McDonagh v. Bergan*,
  2003 WL 21798735 (N.D. Ill. July 25, 2003)..................................................8, 10

*Milwaukee Police Ass'n v. Jones*,
  192 F.3d 742 (7th Cir. 1999) ................................................................................13

*Montgomery Ward & Co. v. United Retail, Wholesale & Dep't Store Employees*,
  400 Ill. 38, 79 N.E.2d 46 (1948)...........................................................................13

*Muzikowski v. Paramount Pictures Corp.*,
  322 F.3d 918 (7th Cir. 2003) ..................................................................................7

*Ortho Pharmaceutical Corp v. Cosprophar, Inc.*,
  32 F.3d 690 (2d Cir. 1994)......................................................................................2

*Petri v. Gatlin*,
  997 F. Supp. 956 (N.D. Ill. 1997) ..........................................................................2

*Rosenthal Collins Group, LLC v. Trading Techs. Int'l*,
  2005 WL 3557947 (N.D. Ill. Dec. 26, 2005)..........................................................5

*Sanderson v. Culligan Int'l Co.*,
  415 F.3d 620 (7th Cir. 2005) ..................................................................................4

*Schaffer v. Zekman*,
196 Ill. App. 3d 727, 554 N.E.2d 988 (1st Dist. 1990)............................................................7

*Solaia Tech. LLC v. Specialty Publ'g Co.*,
221 Ill. 2d 558, 852 N.E.2d 825 (2006)........................................................6, 8, 9, 10

*Stavros v. Marrese*,
323 Ill. App. 3d 1052, 753 N.E.2d 1013 (1st Dist. 2001).........................................12

*Unique Concepts, Inc. v. Manuel*,
669 F. Supp. 185 (N.D. Ill. 1987)..............................................................................13

*United States v. W. T. Grant Co.*,
345 U.S. 629 (1953).....................................................................................................13


**STATUTES**

815 ILCS 510/2(a) .........................................................................................................13


**OTHER AUTHORITIES**

3 *Moore's Federal Practice*, § 15.16[1] (Matthew Bender 3d ed.)................................14

5 *McCarthy on Trademarks and Unfair Competition* § 27:38 (4th ed. 1996).................5

Fed. R. Civ. Proc. 8........................................................................................................7

Fed. R. Civ. Proc. 15(a) ...............................................................................................14

Fed. R. Civ. Proc. 20(a) ...............................................................................................14

## INTRODUCTION

Seeking to frighten consumers and promote the LiceMeister® comb, a competing treatment alternative to Lindane Shampoo, the National Pediculosis Association (the "NPA") has intentionally and repeatedly made false and misleading statements about Lindane. Not only are the NPA's statements defamatory, but they are also inconsistent with the formal positions of the Center for Disease Control and the American Association of Pediatrics, which recommend pediculicidal medications (e.g., Lindane) over combing (e.g., the Licemeister® comb). The NPA now seeks to avoid redress for these statements by moving to dismiss the Amended Complaint on largely identical grounds as those set forth in the Ecology Center Defendants' Motion to Dismiss.[1] For the Court's convenience, where appropriate, Morton Grove incorporates by reference its response to the Ecology Center Defendants' motion.

The NPA's statements do not, as the NPA claims, innocently promote "public debate about the chemical lindane." (NPA Mem. 1). To the contrary, the NPA's statements are self-serving and tortious, and have harmed Morton Grove. While the NPA misguidedly attempts to bolster certain of their statements by claiming they are statements of opinion or subject to a qualified privilege, even the NPA does not and cannot defend each of its statements. For this reason, there are numerous issues of fact regarding the NPA's statements that must be submitted to a jury and which cannot be resolved at the motion to dismiss stage of proceedings. For these and the other reasons discussed more fully below, the NPA's motion to dismiss must be denied.

---

[1]     Both briefs argue: (1) their statements about Lindane are not defamatory *per se* (NPA Mem. at 3-7; Ecology Center Defendants (ECD) Mem. at 22; (2) the innocent construction rule applies (NPA Mem. at 4-6; ECD Mem. at 23-24); (3) their statements about Lindane are not defamatory *per quod* (NPA Mem. at 7-9; ECD Mem. at 24-26); (4) their statements are statements about science (NPA Mem. at 9; ECD Mem. at 26-28, 29-30); (5) their statements about Lindane are not disparaging (NPA Mem. at 13-14; ECD Mem. at 28-30); (6) their statements do not violate the Illinois Uniform Deceptive Trade Practices Act (NPA Mem. at 14; ECD Mem. at 30-33); and (7) the NPA is not properly joined (NPA Mem. at 14-15; ECD Mem. at 33-34).

1

## **ARGUMENT**

Because Morton Grove adequately stated each of its claims and the NPA is properly joined, this Court should deny the NPA's motion to dismiss.  As an initial matter, a complaint "should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim."  *Petri v. Gatlin*, 997 F. Supp. 956, 965 (N.D. Ill. 1997) (citation omitted).  In this inquiry, the Court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in favor of Morton Grove.  *See Faur v. Sirius Int'l Ins. Corp.*, 391 F. Supp. 2d 650, 654 (N.D. Ill. 2005).

## I.    MORTON GROVE STATED A CLAIM UNDER THE LANHAM ACT

### A.    *As A Competitor, Morton Grove Has Standing Under The Lanham Act*

The NPA's LiceMeister® comb is a competitive product with Morton Grove's Lindane.[2]  In fact, the NPA's own literature concedes as much—"When used for early detection and manual removal, the LiceMeister comb is the realistic and practical alternative to unnecessary and potentially harmful pesticides [i.e., Lindane]."  (Am. Compl. ¶ 32.)  The NPA pushes consumers to choose its product over chemical treatments: "Be Sure You Provide a Non-Chemical Choice For Your Children."  (*Id.*)  And the NPA discourages the use of Lindane: "Never resort to dangerous remedies such as lindane, kerosene, or pet shampoos" and "Do not

---

[2]    The NPA's cases do not mandate otherwise, and, in fact, support Morton Grove's position.  For example, in dismissing the Lanham Act claim in *Gail Green Licensing & Design Limited v. Accord, Inc.*, the court stated that "Plaintiffs are not engaged in the same business as Defendants because Plaintiffs are not retailers or manufacturers of pet accessories and clothing," as they only developed, acquired, and licensed products.  2006 WL 2873202, at *5 (N.D. Ill. Oct. 5, 2006) (App. Tab A).  This logic indicates that Morton Grove and the NPA are indeed competitors: both promote and either manufacture or sell a lice treatment product.  Further, the court in *Ortho Pharmaceutical Corp v. Cosprophar, Inc.* did not affirm dismissal of the complaint simply because one product was available over the counter and the other required a prescription.  32 F.3d 690, 696-97 (2d Cir. 1994).  Instead, it affirmed dismissal for lack of standing because the plaintiff "failed to present sufficient evidence to establish that it will likely be damaged by [defendant's] conduct," and had not shown that consumers viewed the defendant's *cosmetics* as a substitute for its *prescription drugs*.  *Id.*

recommend products containing lindane." (*Id.*)   After expressly positioning its product as an alternative, it is disingenuous for the NPA to now assert that it does not compete with Lindane.

While it is true that parties must be competitors for a Lanham Act plaintiff to have standing, it is not a requirement that the plaintiff and defendant operate identical businesses. *See Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir. 1980) (noting that while the products did not compete in a narrow market, they competed in a broader market, and that "[s]uch indirect competitors may avail themselves of the protection of § 43(a); the competition need not be direct").   The NPA cannot and does not dispute that the goal of its marketing efforts is to dissuade consumers from choosing Lindane in favor of the LiceMeister® comb.   The NPA website is further evidence that the NPA's statements have accomplished the desired effect. There, the NPA has posted an excerpt from a parent's letter, which states:

> I used a 1% Lindane solution on my head . . . and I felt ill for days.
> I had no idea that I was poisoning myself. I was also poisoning my
> baby, as I was breastfeeding. I cried all last night as I read your
> webpage. I only wish I had read it before I used that awful
> concoction. The lice are back but now I know better and I will
> NEVER use it again.

(Ex. A).   Thus, there can be no doubt the LiceMeister® comb is a competitor with Lindane and that Morton Grove has standing to bring this Lanham Act action.

### B.      The NPA's Statements Are Advertisements

Next, the NPA argues that its defamatory statements regarding Lindane are not "advertisements" for the LiceMeister®.   Masquerading as a "non-profit educational and research organization," the NPA attempts to scare consumers away from Lindane, and then it conveniently offers its product in Lindane's place.   If the NPA's motives were genuine, it would offer information on the other numerous lice and nit combs on the market, but it does not.

Instead, throughout its website, the NPA touts only its own product.  The NPA's disingenuous argument that it is not promoting its own product through its statements must be rejected.

Moreover, the NPA's alleged non-profit status does not insulate it from Lanham Act liability.  Indeed, one of the NPA's own cases, *Gordon and Breach Scientific Publishers S.A. v. American Institute of Physics*, notes:  "While we have held that non-profit organizations must be free to publish on any topic, even those that redound to their financial benefit, without fear of Lanham Act liability, ***the same does not apply to . . . promotional uses of that speech***."  859 F. Supp. 1521, 1544 (S.D.N.Y. 1994) (emphasis added).

Further, contrary to the multi-factor test set forth in the NPA's memorandum, the Seventh Circuit defines "advertising" as "a subset of persuasion" that "refers to dissemination of prefabricated promotional material," and is "a form of promotion to anonymous recipients." *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803-04 (7th Cir. 2001) (expressing "serious doubts" about the multi-factor test championed by the NPA); *see also Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 624 (7th Cir. 2005) (noting the Lanham Act "addresses 'promotional material disseminated to anonymous recipients'").  "Commercial" refers to "the business purpose for which the advertising or promotion is used." *American Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*, 820 F. Supp. 1072, 1077 (N.D. Ill. 1993).  Under this standard, the NPA's defamatory statements are commercial advertising.[3]

Next, and also contrary to the NPA's assertions, Lanham Act claims are not limited to false statements of fact—false statements fall into two categories: "(1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or

---

[3]    It is undisputed that a website can be a form of commercial advertising.  *See Euromarket Designs, Inc., v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 831 (N.D. Ill. 2000) (stating "website is a form of commercial advertising or promotion" so that mark used therein was used in connection with goods, in determining subject matter jurisdiction for Lanham Act trademark claim).

ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). The NPA's statements fall into both categories. For example, the statement that in many cases Lindane is "sold or prescribed without adequate warnings or guidance on use. It is applied to the scalp and overuse is encouraged" is false, as the FDA and Morton Grove have taken significant steps to discourage overuse, including the boxed warning and requiring medication guides be dispensed with Lindane prescriptions. (Am. Compl. ¶ 26). And, the statement about the FDA regarding Lindane "as potentially more toxic than all other pediculicidal choices" is false and misleading, as Lindane medications are FDA-approved as safe and effective for the second-line treatment of lice and scabies. (Am. Compl. ¶ 32).

Additionally, the NPA's statements are not unactionable puffery. "Puffing," which is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely," is not actionable under the Lanham Act. 5 *McCarthy on Trademarks and Unfair Competition* § 27:38 (4th ed. 1996). Actionable statements, in contrast, include those that address "specific or absolute characteristics of a product capable of testing." *Rosenthal Collins Group, LLC v. Trading Techs. Int'l*, 2005 WL 3557947, at *10 (N.D. Ill. Dec. 26, 2005) (App. Tab B). The NPA's statements are specific, verifiable, and false. For example, whether or not entries in the NPA's laundry list of symptoms are actually connected to Lindane use can be tested by researching the FDA's Adverse Event Reporting System Database and reviewing the FDA-approved prescription labeling for Lindane, which was updated for safety in 2003. (*See* Am. Compl. ¶ 24). Whether "[c]ase-controlled research shows a significant association between the incidences of brain tumors in children with the use of lindane-containing lice shampoos" can be tested by evaluating the study itself and the weight of scientific evidence to show whether

there is a scientific association between Lindane and brain tumors.  (*See* Am. Compl. ¶ 31.)

Likewise, whether the "health risks inherent with the use of pesticides on children . . . increase

dramatically when you follow one chemical treatment with another" can be tested with scientific

studies.  (*See* Am. Compl. ¶ 28.)

Finally, the NPA's references to Lindane are not references to a "mystery rival"—

Lindane is specifically mentioned and the NPA does not and cannot dispute that Morton Grove

has been the only United States Lindane manufacturer since 2003.  (*See* Pl.'s Resp. to Ecology

Center Defs. 3, Exs. A & B; Am. Compl. ¶ 18).

## II.    MORTON GROVE STATED A CLAIM FOR DEFAMATION

### A.    *The NPA's Statements Are Defamatory Per Se*

#### 1.    The NPA's Statements Are *Per Se* Defamatory Under Illinois Law

The NPA's statements about Lindane fit squarely into Illinois' fourth category of

*per se* defamation—"words that impute a person lacks ability or otherwise prejudices that person

in her or his profession."  *Solaia Tech. LLC v. Specialty Publ'g Co.*, 221 Ill. 2d 558, 579-80, 852

N.E.2d 825, 839 (2006).[4]  These statements fall into the *per se* category because they are

"obviously harmful."  *Bryson v. News America Publ'n, Inc.*, 174 Ill. 2d 77, 87, 672 N.E.2d 1207,

1214 (1996) (noting that when statements are "obviously and materially harmful," injury is

presumed).  The NPA's statements prejudice Morton Grove and its Lindane medications, as the

NPA broadcasts, *inter alia*, that:  "Case-controlled research shows a significant association

---

[4]    *Solaia Technology, LLC* involved two companies and a defamation charge, yet the Illinois Supreme Court listed Illinois' standard five defamation categories—strong indication that there is no separate test for corporations.  221 Ill. 2d at 579-80, 852 N.E.2d at 839.  When addressing defamatory statements about corporations, courts may tailor their descriptions of Illinois *per se* defamation categories to better fit the situation at hand, but phrasing the standards that way does not materially change them.  *See Chicago Conservation Ctr. v. Frey*, 40 Fed. Appx. 251, 255 & n.9 (7th Cir. 2002) (nonprecedential) (App. Tab C) (concluding that the two lines of cases—articulating different standards for corporations or using the typical phrasing of the standards—do not necessarily conflict, as the specified corporate categories likely fit into one of the five general types of defamation).

between the incidences of brain tumors in children with the use of lindane-containing lice shampoos," "Lindane should be handled as a CARCINOGEN WITH EXTREME CAUTION," and the EPA "classif[ies] lindane as a possible human carcinogen." (Am. Compl. ¶¶ 30-31.) Like the Ecology Center Defendants' statements, these statements, which are directed at potential and actual Lindane consumers, could not be any more obviously harmful.

## 2. The NPA's Statements Are Of And Concerning Morton Grove And Its Products

The NPA's statements are of and concerning Morton Grove and its Lindane medications, even though the statements do not say the words "Morton Grove Pharmaceuticals," "Lindane Lotion," or "Lindane Shampoo." After *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 554 N.E.2d 988 (1st Dist. 1990), and *Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d 388, 652 N.E.2d 1077 (1st Dist. 1995), two of the cases the NPA cites for its "of and concerning" standard, Illinois clarified its position about whether a defamatory statement must name the plaintiff to be of and concerning the plaintiff. In *Bryson*, the court stated that "where a libelous article *does not name the plaintiff*, it should appear on the face of the complaint that persons other than the plaintiff and the defendant must have reasonably understood that the article was about the plaintiff and that the allegedly libelous expression related to her." 174 Ill. 2d at 96-97, 672 N.E.2d at 1218; *see also Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 925-26 (7th Cir. 2003) (acknowledging *Bryson* and noting that in federal court, notice pleading under Rule 8 is all that is required). In light of the fact that Morton Grove is the sole manufacturer of Lindane medications, any reasonable third person would "have reasonably understood" the NPA's statements to be about Lindane medications and Morton Grove Pharmaceuticals.

Where a plaintiff affirmatively pleads that a defendant's statements are about it, as Morton Grove has done, even statements that do not specifically name the plaintiff may be

defamatory *per se*.[5]  In *Appraisers Coalition v. Appraisal Institute*, for example, the statements "Now there are only two professional designations for appraisers" and "[m]any call themselves appraisers but not all appraisers are professional" were found to be defamatory *per se*.  845 F. Supp. 592, 610 (N.D. Ill. 1994).  The court found that the statements limited professional appraisers to the two designations the defendants offered, excluding plaintiffs' SPRA designation, and that "[t]o a knowledgeable reader, this statement has the same effect as the statement: 'SPRAs are not professional appraisers.'"  *Id.*

Here, Morton Grove pled that the NPA's statements are about Morton Grove and its Lindane medications.  References to "lindane" as a treatment for head lice necessarily refer to Lindane because Morton Grove has been the only manufacturer of Lindane in the United States for the last four years.  As in *Appraisers Institute*, a knowledgeable reader would know that a statement like "Do not recommend products containing lindane.  The Food and Drug Administration (FDA) regards it as potentially more toxic than all other pediculicidal choices and no more effective," (Am. Compl. ¶ 32), refers to Lindane-based lice treatments and their manufacturer, Morton Grove.

### B.    The Innocent Construction Rule Cannot Save The NPA

The NPA's statements cannot be innocently constructed.  If a statement can "reasonably be interpreted as referring to someone other than the plaintiff," then it is not actionable as *per se* defamation.  *Solaia Tech. LLC*, 221 Ill. 2d at 580, 852 N.E.2d at 839.  But

---

[5]      The NPA's cases on this point do not mandate that a statement "cannot be defamatory *per se* if it does not concern the plaintiff on its face or if the plaintiff must plead extrinsic facts, " as the NPA claims. (NPA Mem. at 4).  In *McDonagh v. Bergan*, the court dismissed plaintiffs' defamation claim because plaintiffs "fail[ed] to allege that defendant's statements concerned them," that the insurance carriers knew they were involved in the method of sclerotherapy referenced in the defendants' statements, or that any third party understood the statements were about them individually.  2003 WL 21798735, at *3 (N.D. Ill. July 25, 2003) (App. Tab D).  While the court indeed noted that the statements referred to a process and not a person, it was plaintiffs' failure to allege any connection that led to dismissal.  *See id.*

when, as here, statements are clearly meant to "convey[] a defamatory meaning, a court should not strain to see an inoffensive gloss on the statement." *Id.* Morton Grove has been the only United States distributor of Lindane for the last four years. (Pl.'s Resp. to Ecology Center Defs., Exs. A & B.) Reasonably, statements about Lindane must refer to Morton Grove and its products. *See Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 267 (7th Cir. 1983) (noting broadcaster's mention of plaintiff's brand of cigarettes contained enough details from which it could be concluded that the statement referred to the plaintiff).

The NPA suggests that some of its statements taken in context,[6] such as "Illinois Banned Lindane," may have an innocent construction. (*See* NPA Mem. 5-6 & 6 n.4). However, when statements such as this are taken in context, they clearly mean to convey a defamatory meaning. The NPA's suggested constructions are strained.

Further, the NPA's allegation that Morton Grove must prove actual malice is incorrect and unsupported. Morton Grove is not a public figure because it has not assumed a role of prominence in society. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351-52 (1974). The NPA has not attempted to prove otherwise.

## C.    In The Alternative, The NPA's Statements Are Defamatory Per Quod

Even if the Court does not find the NPA's statements defamatory *per se*, the NPA's statements are defamatory *per quod*. For *per quod* defamation—statements needing extrinsic facts to prove injury or statements defamatory on their face that do not fit into one of the traditional categories—a plaintiff must plead and prove special damages. *Bryson*, 174 Ill. 2d at 102, 672 N.E.2d at 1221. Morton Grove has carried this burden, pleading "[a]s a result of

---

[6]    The NPA asserts this statement must be read in context with the article previously linked to it. (NPA Mem. 6 n.4). However, as of April 16, 2007, "Illinois Bans Lindane" is hyperlinked only to a page with an error message, *see* http://www.headlice.org/lindane/_world/legal/banned.htm, and the web page that contained the statement "Illinois Banned Lindane" is no longer available online, *see* http://www.bodylice.org/lindane/petition/illinois.htm. (Ex. B).

9

Defendant's statements, Lindane sales have decreased approximately 23%, with a total loss of more than $9.3 million between January and November 2006." (Am. Compl. ¶ 37.) This allegation meets the Illinois standard of being "as specific as it is reasonable to require." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 367 Ill. App. 3d 48, 59, 853 N.E.2d 770, 781 (1st Dist. 2006) (holding special damages sufficiently pled where plaintiff claimed a decline in sales to the general public, as the result of defendant's defamatory advertisement in a major newspaper, by alleging its sales decreased from the month before the advertisement was published and as compared to the same month during the previous year).

> ### D.    *The NPA's Statements Are Not Scientific Opinion*

The NPA's statements are not part of a scientific discussion about the merits of the use of Lindane. Statements of opinion are protected by the First Amendment only if they cannot be "reasonably interpreted as stating actual fact." *Solaia Tech., LLC*, 221 Ill. 2d at 581, 852 N.E.2d at 840. "If a statement is factual, and it is false, it is actionable." *Id.*, 221 Ill. 2d at 582, 852 N.E.2d at 840. And while statements about medical science are given heightened protection, ***factually misleading statements are not protected***. *McDonagh*, 2003 WL 21798735, at *3 (App. Tab D).

Furthermore, the NPA falsely asserts that its statements "provide readers with the factual bases for [its] statements." (NPA Mem. 9). For example, the NPA states that Lindane "is applied to the scalp and overuse is encouraged"—but fails to provide any factual basis for how or why overuse of Lindane is encouraged. (*See* Am. Compl. ¶ 26). The NPA gives a laundry list of ***alleged*** signs and symptoms of exposure to Lindane, ranging from acute renal failure to wheezing—but misleadingly omits that the vast majority of these effects are ***not*** listed in the FDA-approved product labels and were not reported to Morton Grove or the FDA through its Adverse Event Reporting System Database, but instead were made up by the NPA to cause

Morton Grove injury.  (*See* Am. Compl. ¶ 24).  And the NPA even states that "Illinois Bans Lindane" and "Illinois Banned Lindane"—blatant misstatements which no facts could support, as Lindane has not been banned in Illinois.  (*See* Am. Compl. ¶ 27).

> ### E.      *The NPA's Statements Are Not Protected By Any Qualified Privilege*

The NPA's statements are not protected by the fair report privilege.  First, the NPA suggests that it has a fair report privilege for the statement "[The bill] finds that the main source of lindane in sewers is from treatment of head lice and scabies and that a single treatment of lindane pollutes 6 million gallons of water."  (NPA Mem. 2; *see* Am. Compl. ¶ 29).  To support this assertion, the NPA contends that its statements "are complete and accurate reports or fair abridgements of official governmental proceedings"—but offers no facts or even the full text of the bill to prove this statement.  (*See* NPA Mem. 9-10).  The NPA had the burden of proving it has a fair report privilege, and it has failed to carry this burden.  *See Achanzar v. Ravenswood Hosp.*, 326 Ill. App. 3d 944, 949, 762 N.E.2d 538, 543 (1st Dist. 2001).

Second, even assuming that the NPA has a general qualified privilege because certain of its statements concern issues of interest to it, its audience, or the general public, its statements are actionable because it abused that privilege.  Abuse of a privilege requires intent to injure and "may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties."  *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill. 2d 16, 30, 619 N.E.2d 129,  136 (1993); *see Clarage v. Kuzma*, 342 Ill. App. 3d 573, 584, 795 N.E.2d 348, 358-59 (3d Dist. 2003) (finding plaintiff alleged facts indicating several defendants "knew the statements to be false when they sent the letter" at issue, which, if proven, would bar application of the privilege).  When abused, a qualified privilege is lost.  *Kuwik*, 156 Ill. 2d at 24-30, 619 N.E.2d at 132-36.

The NPA blatantly abused any privilege it had, as the NPA either knew or should have know that its statements were false. And, the NPA certainly knew its statements were false when they were informed of as much by Morton Grove prior to the start of this litigation. (*See* Am. Compl. Ex. E, at 3). Nevertheless, the NPA refused to retract its statements, showing a reckless disregard for Morton Grove's rights.

Regardless, the NPA would have discovered the falsity of its statements much earlier if it had properly investigated them. For example, a brief look at the status of the proposed bill in Illinois would have revealed that it had not passed. (*See* Am. Compl. ¶ 27, Ex. E, at 3). In its memorandum, the NPA even acknowledges that its statements "Illinois Bans Lindane" and "Illinois Banned Lindane" are misleading. (*See* NPA Mem. 6 n.4). Other statements reveal similar falsity upon investigation. For example, proper research into the "[c]ase-controlled research" the NPA cites would show those studies were later specially reviewed by the FDA and their results found unlikely—no changes in the prescription product labeling were advised. (*See* Am. Compl. ¶ 31, Ex. E, at 5-6).

Finally, although the determination of whether a qualified privilege exists is a question of law, whether the privilege was abused is a question of fact. *Achanzar*, 326 Ill. App. 3d at 949, 762 N.E.2d at 543. As such, this Court should not grant the NPA's motion to dismiss. *See Stavros v. Marrese*, 323 Ill. App. 3d 1052, 1058-60, 753 N.E.2d 1013, 1018-20 (1st Dist. 2001) (reversing dismissal of defamation claim because plaintiff raised triable issue of fact about whether defendant abused privilege).

**III.    MORTON GROVE STATED A CLAIM FOR TRADE DISPARAGEMENT**

Morton Grove sufficiently stated a claim for trade disparagement.[7]  Because the NPA's statements impugn the quality of Lindane and the integrity of Morton Grove's business, Morton Grove may bring both defamation and trade disparagement actions.  *See Imperial Apparel, Ltd.*, 367 Ill. App. 3d at 60, 853 N.E.2d at 781-82.  And because the NPA's statements accuse Morton Grove of "reprehensible business methods," Morton Grove need not plead special damages.  *See Unique Concepts, Inc. v. Manuel*, 669 F. Supp. 185, 190 (N.D. Ill. 1987).

**IV.    MORTON GROVE STATED A CLAIM UNDER THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT**

Morton Grove sufficiently stated a claim for an injunction under the Illinois Uniform Deceptive Trade Practices Act.  Because the NPA "disparages the goods, services, or business of another by false or misleading representation of fact," it has engaged in a deceptive trade practice.  *See* 815 ILCS 510/2(a).  A party requesting injunctive relief must show that "there exists some cognizable danger of recurrent violation, something more than the mere possibility" of the violation reoccurring.  *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953); *see Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 748 (7th Cir. 1999).  Morton Grove pled this sufficiently in its complaint, as all it needed to plead was a claim for relief.  *See Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005).  It stated: "Defendants' failure to retract and continued publication of these false statements, despite knowing their falsity, demonstrates Defendants' intent to inflict economic harm on Morton Grove.  It also demonstrates Defendants' intention to continue to harm Morton Grove in the future."  (Am. Compl. ¶ 40).

---

[7]      Trade disparagement is a viable cause of action in Illinois.  *See Imperial Apparel, Ltd.*, 367 Ill. App. 3d at 59-60, 853 N.E.2d at 781-82 (criticizing *Becker v. Zellner*, 292 Ill. App. 3d 116, 684 N.E.2d 1378 (2d Dist. 1997)); *see also Montgomery Ward & Co. v. United Retail, Wholesale & Dep't Store Employees*, 400 Ill. 38, 49-51, 79 N.E.2d 46, 52-53 (1948).

## V.    THE NPA WAS PROPERLY JOINED TO THIS SUIT

The NPA was properly joined to this suit, and even if this Court finds it was not, this defect may be corrected.  Federal Rule of Civil Procedure 15(a) states: "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served," and a motion to dismiss is not a responsive pleading, *Camp v. Gregory*, 67 F.3d 1286, 1289 (7th Cir. 1995).  Several courts in this circuit have stated that when such an amendment adds a party, permission of the court is required.  *See, e.g.*, *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc*., 805 F.2d 732, 736 (7th Cir. 1986).  However, *Moore's Federal Practice* suggests that "[t]he better view, however, rejects the notion that a motion to amend is required to add or drop parties before the filing of a responsive pleading."  3 *Moore's Federal Practice*, § 15.16[1] (Matthew Bender 3d ed.).

In any event, Morton Grove advised this Court of its intent to add the NPA at a status conference on February 8, 2007.  Further, "if a plaintiff files an amended compliant adding additional parties without first obtaining leave of the court, the defect may be corrected and does not, in itself, justify dismissal of the action."  *Ed Miniat, Inc.*, 805 F.2d at 736.

Moreover, the NPA was properly joined to this action because (1) the right Morton Grove asserts is based on the "same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. Proc. 20(a).  Morton Grove's claims against the NPA arise out of the same series of occurrences as its claims against the Ecology Center Defendants.  The NPA and the Ecology Center Defendants engaged in a campaign to achieve the same goal—a ban of the sale and use of Lindane.  They are not strangers: the NPA includes information about the Ecology Center on its website, an NPA representative spoke with an Ecology Center employee, and the Ecology Center Defendants refer to the NPA's LiceMeister® in their defamatory statements.

(Pl.'s Resp. to Ecology Center Defs., Ex. J).  Additionally, the NPA and the Ecology Center Defendants directed their comments at almost identical audiences—consumers in the market place for lice and scabies treatments.

Common questions of law and fact will also predominate actions against all defendants.  Morton Grove alleges three of the same claims against all Defendants: defamation, trade disparagement, and a violation of the Illinois Deceptive Trade Practices Act.  More importantly, the NPA's and the Ecology Center Defendants' statements are strikingly similar—such as the NPA's statement that "the U.S. EPA classif[ies] lindane as a possible human carcinogen" and the Ecology Center Defendants' statement that Lindane is "classified as a 'possible carcinogen' by the EPA."  (Pl.'s Resp. to Ecology Center Defs., Ex. K).

Evaluating a request for severance, courts routinely consider (1) whether severance would facilitate settlement of the claims or judicial economy, (2) whether prejudice would be avoided if severance were granted, and (3) whether different witnesses and documentary proof are needed for the claims.  *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854, 862 (C.D. Ill. 2003).  These factors also weigh in Morton Grove's favor: one trial that explores the joint issues of law and fact will be more efficient; no issues of prejudice are apparent; and significant evidence and testimony about the common campaign to disparage Lindane will be the same.

## CONCLUSION

For the reasons detailed above, Morton Grove respectfully requests that this Court deny Defendants' motions to dismiss and sever.

Dated:  April 25, 2007              Respectfully Submitted,


                                    **MORTON GROVE PHARMACEUTICALS, INC.**


                                    By:__s/ William C. O'Neil____
                                           One of its Attorneys

W. Gordon Dobie
Timothy Rivelli
William C. O'Neil
Cherish M. Keller
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
P:  (312) 558-5600
F:  (312) 558-5700

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of April 2007, I caused to be served a copy of **Morton Grove Pharmaceuticals, Inc.'s Memorandum of Law In Opposition to the National Pediculosis Association's Motion to Dismiss** to be served on counsel of record by ECF electronic filing:

Richard M. Waris
James J. Sipchen
PRETZEL & STOUFFER, CHARTERED
1 S. Wacker Dr., Ste. 2500
Chicago, IL 60606
T: (312) 578-7404
F: (312) 346-8242

Debbie L. Berman
Jennifer A. Hasch
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
T: (312) 222-9350
F: (312) 527-0484

Kevin M. O'Hagan
Edward C. Eberspacher
O'HAGAN SPENCER, LLC
55 W. Wacker Dr., Ste. 1400
Chicago, IL 60601
T: (312) 422-6100

       s/ William C. O'Neil