## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MORTON GROVE PHARMACEUTICALS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 3815 |
| | ) | |
| **THE NATIONAL PEDICULOSIS ASSOCIATION, INC., ECOLOGY CENTER, INC., JOHN FLIEGEL, MD, WILLIAM B. WEIL, MD,** | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Defendants Ecology Center, Inc. ("the Center"), John Fliegel, MD ("Fliegel"), and William B. Weil, MD ("Weil") have brought a motion to dismiss counts II, III and IV of the complaint brought by plaintiff Morton Grove Pharmaceuticals, Inc., ("MGP") for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2), improper venue under FED. R. CIV. P. 12(b)(3), or, in the alternative, to transfer the case to the Eastern District of Michigan, and for failure to state a claim under FED. R. CIV. P. 12(b)(6). For the following reasons, the motion to dismiss for lack of personal jurisdiction is granted.

### I.

MGP, a Delaware corporation, is a pharmaceutical company with its principal place of business in Morton Grove, Illinois. MGP manufactures Lindane Lotion and Lindane Shampoo ("collectively Lindane"), which are FDA-approved medications for the treatment of

lice and scabies.  These products are named after their active ingredient – lindane.  Presently, MGP is the only United States manufacturer and distributor of Lindane.

The Center is a non-profit environmental group in Michigan. The Center's sole place of business is Ann Arbor, Michigan and has never maintained offices, registered agents or employees in Illinois.  Fliegel and Weil are physicians licensed to practice in the field of pediatric medicine in Michigan.  Neither individual is licensed or alleged to have practiced medicine in Illinois.  Both individuals reside in Michigan, where they have worked with the Center, and have never resided in Illinois.

MGP has filed claims for defamation (Count II), trade disparagement (Count III), and violations of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 (Count III) against all defendants.  The complaint specifically alleges that the Center, Fliegel, and Weil engaged in a false, misleading and defamatory attack campaign on MGP and its product, Lindane.  As a result, MGP is alleged to have suffered a decline in the sale of Lindane and reputational injury.  With regard to jurisdiction, the complaint alleges the Center "actively solicits donors by mail and distributes 'fact sheets' and 'newsletters' . . . in Illinois;" "has raised money from eleven Illinois residents since December 2003;" "and has spent $2,900 in business and travel expenses in Illinois since February 2004."  (Compl. at ¶ 11.)

II.

On a motion to dismiss for lack of personal jurisdiction or improper venue, I read the complaint liberally and draw all reasonable inferences in favor of the plaintiff. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). Where conflicting evidence is presented, I resolve factual disputes in the plaintiff's favor. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997); *Rotec Indus., Inc., v. Aecon Group, Inc.*, 436 F. Supp.2d 931, 933 (N.D. Ill. 2006). The plaintiff has the burden to demonstrate that venue is proper and that this court has personal jurisdiction over the defendant. *RAR*, 107 F.3d at 1276; *Cent. States, Southeast and Southwest Areas Pension Fund*, 440 F.3d 870, 875 (7th Cir. 2006); *Rotec Indus.*, 436 F. Supp.2d at 933.

A federal court exercising diversity jurisdiction has personal jurisdiction over the defendant if the state in which it sits would have such jurisdiction. *RAR*, 107 F.3d at 1275 (quoting *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995)). This court's exercise of personal jurisdiction must comport with Illinois statutory and constitutional law, and federal constitutional law. *See id.* at 1276. The Illinois long-arm statute provides that an Illinois court may exercise personal jurisdiction "on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c).

3

Therefore, I need only consider whether exercise of personal jurisdiction over defendants would be proper under Illinois and federal conceptions of due process.

Under the Due Process Clause of the Illinois Constitution, a court may exercise jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill.2d 244, 275, 152 Ill. Dec. 384, 398, 565 N.E.2d 1302, 1316 (1990) (citation omitted). Although the Illinois Supreme Court contended in *Rollins* that the due process requirements under the Illinois constitution are distinct from the requirements of federal due process, *see id.*, the Seventh Circuit has since affirmed that it is only in the rare, and perhaps hypothetical, case that the federal due process analysis might actually differ from the Illinois due process analysis. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) ("[W]e note that in no case post-*Rollins* has an Illinois court found federal due process to allow the exercise of jurisdiction in a case where Illinois limits prohibited it.").

Under the Due Process Clause of the Fourteenth Amendment, a defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Hyatt Int'l*, 302

F.3d at 716; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940)). Here, MGP argues that this court may exercise both general and specific jurisdiction over the Center and only specific jurisdiction over Fliegel and Weil. Specific jurisdiction is jurisdiction that arises out of or relates to the defendant's contacts with the forum. *RAR*, 107 F.3d at 1277 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Minimum contacts are established for purposes of specific jurisdiction when the defendant's contacts with the forum state demonstrate that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, such that the defendant could reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *RAR*, 107 F.3d at 1277 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)). "General jurisdiction, meanwhile, is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum." *RAR*, 107 F.3d at 1277 (quoting *Helicopteros*, 466 U.S. at 416).

A. General Jurisdiction

MGP first argues for general jurisdiction over the Center. In support, plaintiff claims that the Center solicited donations in

Illinois, sending two sets of newsletters to Illinois residents and receiving donations from Illinois over the last five years. MGP also identifies that the Center has received two large grants from an Illinois-based foundation in the amounts of $150,000 in 2002 and $120,000 in 2003. Moreover, plaintiff argues that the Center maintains an "interactive" webpage on which visitors can make donations or pledge non-financial support to environmental causes.

The standard for establishing general jurisdiction is a "fairly high standard and requires a great amount of contacts." *Jamik, Inc. v. Days Inn of Mt. Laurel*, 74 F.Supp.2d 818, 822 (N.D. Ill. 1999); *see also Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003). "[N]either 'mere occasional solicitation' nor 'isolated, sporadic transactions with residents of the forum state' is enough to satisfy the requirements of general jurisdiction." *Contrak, Inc. v. Paramount Entrs., Int'l., Inc.*, 201 F.Supp.2d 846, 850 (N.D. Ill. 2002) (alterations omitted) (quoting *Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1193 (7th Cir. 1980)).

MGP has not met its burden in establishing the existence of "continuous and systematic general business contacts" in Illinois which would warrant finding it fundamentally fair to require the Center to answer in an Illinois court "to any litigation arising out of any transaction taking place anywhere in the world." *Purdue*, 338 F.3d at 787 (emphasis omitted). The newsletters that

6

MGP refers to concern the passage of Michigan legislation (House Bill 5574) and are addressed to Michigan residents. The Center mailed the first newsletter in April 2006 to approximately 5,870 addresses; 23 of those were in Illinois. The Center mailed the second newsletter in May 2006 to 13,220 addresses; 21 of those were in Illinois. No other correspondence to Illinois residents is identified. The Center never received any donations in response to these letters from any of the Illinois addresses. Since 2002, the number of the Center's donors who are Illinois residents is 18. This consists of 0.23% of the total number of the Center's donors since 2002. In contrast, over 99% of the Center's remaining donors are from Michigan.

The only substantial donations that the Center has received from an Illinois resident took place in 2002 and 2003; these donations were by a foundation in Illinois. The donations consisted of $150,000 in 2002 and $120,000 in 2003. The sole fact that the Center accepted these two donations, however, is not sufficient to support a finding of general jurisdiction. *Cf. Estate of Ungar v. Palestinian Auth.*, 400 F.Supp.2d 541, 552 (S.D.N.Y. 2005) (no general jurisdiction over foreign party making donation of $5,000 to a non-profit headquartered in New York); *Steego Corp. v. Ravenal*, 830 F. Supp. 42, 51 (D. Mass. 1993) (no general jurisdiction despite party's practice of making donations to charitable causes in Massachusetts). Accepting the two

7

donations, once in 2002 and once in 2003, does not constitute "continous and systematic activity" in Illinois. *See Helicopteros*, 466 U.S. at 409-12, 418-19 (defendant's contacts of sending its chief executive officer to Houston for a negotiating session, accepting checks drawn on a Houston bank, purchasing helicopters, equipment and training services from a Fort Worth helicopter company and sending personnel to the helicopter company's facilities in Fort Worth for training were insufficient contacts to permit a Texas court to exercise personal jurisdiction over the defendant).

Nor does the Center's website provide a basis for general jurisdiction. The website, which is maintained in Ann Arbor, Michigan, does not engage in commerce with Illinois residents. While the website is equipped to accept donations, in fact, the Center has not received any online donations through the website from any Illinois residents. This weighs against general jurisdiction. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549-50 (7th Cir. 2004); *Dakota Beef, LLC v. Pigors*, 445 F.Supp.2d 917, 920-21 (N.D. Ill. 2006) (maintenance of website which was equipped to take orders from customers but received only two orders from Illinois residents was insufficient to establish jurisdiction); *Jackson v. California Newspapers, P'ship*, 406 F.Supp.2d 893, 898 (N.D. Ill. 2005) (newspaper with website containing primarily local content that allowed users to subscribe online but had not received

any subscriptions from Illinois residents did not confer jurisdiction). Nothing in the printed excerpts of the website provided by plaintiff suggests that any of the website's content targets Illinois residents. To the contrary, some of the excerpts explicitly restrict the applicability of the information provided on the website to the Ann Arbor community. The fact that the website allows individuals, regardless of their residence, to pledge non-financial support for certain environmental causes does not sustain a finding of general jurisdiction over the Center.

Finally, MGP's allegation in the complaint that the Center has accumulated $2,900 in business and travel to Illinois since February 2004, on its face, is insufficient to create general jurisdiction over the Center. Even sporadic business trips to a forum state are not sufficient to establish general jurisdiction. *See Helicopteros*, 466 U.S. at 416-17; *Sitrick v. Freehand Syst., Inc*., No. 02 C 1568, 2004 WL 2191491, *2 (N.D. Ill. Sept. 27, 2004). Accordingly, I do not find this court has general jurisdiction over the Center.

## B. Specific Jurisdiction

MGP argues that this court has specific jurisdiction over the Center, as well as Fliegel and Weil, because they purposefully availed themselves of the Illinois forum by (1) sending the aforementioned newsletters to Illinois residents in April 2006 and May 2006; (2) inflicting reputational and economic injury on an

9

Illinois company; and (3) responding to MGP's cease and desist letters. I disagree. First, the April 2006 and May 2006 newsletters that were sent to Illinois residents are not the basis of MGP's claims against defendants. In fact, the only newsletters or letters attached to and incorporated in the complaint (Compl. at Exh. B-D), and which are the basis of MGP's claims, were sent strictly to Michigan residents.[1] The April 2006 and May 2006 newsletters, produced by plaintiff in opposing the motion to dismiss, are the only correspondence identified by plaintiff as reaching any Illinois residents. And while the April 2006 and May 2006 newsletters discuss lindane as a chemical ingredient, they are not alleged to be defamatory, constitute trade disparagement, or violate the Illinois Deceptive Trade Practices Act. The Seventh Circuit has stressed that in order for specific jurisdiction to exist "the action must *directly arise* out of the specific contacts between the defendant and the forum state." *RAR*, 107 F.3d at 1278 (emphasis in original) (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995)). Plaintiff has failed to show this here. As made clear by the face of the complaint and the evidence produced

---

[1]As set forth in Counts II-IV of the complaint (Compl. at ¶¶ 54, 59, 65), the statements that MGP claims are "false and misleading" are set forth in paragraphs 24-36 of the complaint. In turn, paragraphs 24-36 incorporate exhibits B-D, which are not the same letters that defendants sent to Illinois addresses.

by MGP in response to the motion to dismiss, the April 2006 and May 2006 newsletters do not warrant a finding of specific jurisdiction over the defendants.

Moreover, MGP completely fails to explain why the April 2006 and May 2006 newsletters provide specific jurisdiction over Fliegel or Weil. MGP does not point to any reference to or mention of Fliegel in the April 2006 and May 2006 newsletters. As far as I can tell, his name does not appear anywhere in these newsletters. Weil's name does appear on one of the newsletters, but this newsletter is not the basis of plaintiff's action. Neither the complaint nor MGP's response to the motion to dismiss allege that either individual defendant sent or was aware that the newsletters were sent to any addresses in Illinois such that they purposefully availed themselves of the privilege of conducting activities within Illinois and that they could reasonably anticipate being haled into court here. This is not sufficient for specific jurisdiction.

MGP next contends that defendants are subject to specific jurisdiction in Illinois because MGP has suffered reputational and economic injury in Illinois. However, a tortious act is not committed in Illinois merely because defendants allegedly caused MGP reputational and economic injury within the state; MGP must show that the tort occurred in the state of Illinois in some fashion. *See Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (tort of interference with prospective economic advantage by

11

making false claims of copyright infringement was not complete until Janmark's customer canceled the order in Illinois, therefore the injury and tort occurred in Illinois); *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship*, 34 F.3d 410, 412 (7th Cir. 1994) (finding Maryland-based franchise subject to personal jurisdiction in Indiana because defendant entered Indiana through television broadcasts in allegedly infringing on plaintiff's intellectual property rights).  Here, although MGP claims that defendants issued false, misleading and defamatory statements, it has not shown that defendants had any contact with Illinois or its residents in committing these acts; there is no evidence that defendants issued any of the allegedly false, misleading and defamatory statements in Illinois, targeted Illinois residents.  No materials on the website are alleged to be defamatory or injurious and there is no evidence that defendants had any contact with Illinois residents through the website. Moreover, neither the April 2006 and May 2006 newsletters, nor the materials incorporated in the complaint, mention MGP as the manufacturer of Lindane or otherwise.  Therefore, this is not an appropriate basis for personal jurisdiction over defendants.

Finally, MGP asserts that defendants' letter dated July 17, 2006, sent in response to MGP's cease and desist letter, confers minimum contacts such that specific jurisdiction is proper.  In support MGP cites *FMC Corp v. Varonos*, 892 F.2d 1308, 1313 (7th

Cir. 1990), in which the a defendant sent multiple telexed requests and telecopied reports to Illinois which furthered a scheme to defraud.

There are several problems with MGP's argument. First, the mailing of a single letter in response to a cease and desist-type letter does not rise to the level of "purposeful availment." *See Burger King*, 471 U.S. at 475 ("This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person.") (quotations omitted); *Olson v. Jenkens & Gilchrist*, 461 F.Supp.2d 710, 724 (N.D. Ill. 2006) (citing *Harding Univ. v. Consulting Servs. Group*, L.P., 22 F.Supp.2d 824, 827 (N.D. Ill. 1998) (single letter to Illinois is generally insufficient to establish specific jurisdiction). Second, the dispute in this case does not result from the correspondence among parties, but from the alleged tortious conduct of the defendants which took place only in Michigan. This distinguishes *FMC Corp*., where the multiple communications sent to Illinois directly furthered the underlying scheme to defraud. Third, the practical effect of adopting plaintiff's argument is to undermine public policy. This would decrease the likelihood of extra-judicial dispute resolution and undermine "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *Asahi Metal*

13

*Indus. Co., Ltd. v. Superior Court of California, Solano County*,
480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen*, 444 U.S.
at 292).    Finally, even assuming the July 17, 2006, response
letter provided sufficient minimum contacts with Illinois, this
would not "comport with 'fair play and substantial justice.'"
*Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320);
*Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202
(Fed. Cir. 2003) (citations omitted) ("For the exercise of personal
jurisdiction to comport with fair play and substantial justice,
there must be 'other activities' directed at the forum and related
to the cause of action besides the letters threatening an
infringement suit."); *The Gentle Wind Project v. Garvey*, No. 04-
103-P-C, 2005 WL 40064, at *11 (D. Me. Jan. 10, 2005) (defamation
case); *Wise v. C. Lindamood*, 89 F.Supp.2d 1187, 1191-92 (D. Colo.
1999).    "A prospective defendant receiving such a letter, under the
[plaintiff's] theory, would be put to a choice between being haled
into court in a distant forum or taking an action which might well
be used as evidence of an admission of tortious conduct should
legal action be initiated by the plaintiff in the state in which
the prospective defendant resides."  *The Gentle Wind Project*, No.
04-103-P-C, 2005 WL 40064, at *11.    Accordingly, I do not find
specific jurisdiction exists over the defendants.

III.

I find that this court lacks personal jurisdiction over the Center, Fliegel and Weil and grant defendants' motion to dismiss under FED. R. CIV. P. 12(b)(2).

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 3, 2007