# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**MORTON GROVE PHARMACEUTICALS, INC.,**   )
                                            )
      Plaintiff,                          )
                                            )
  v.                                        )   No. 06 C 3815
                                            )
**THE NATIONAL PEDICULOSIS**                )
**ASSOCIATION, INC., ECOLOGY CENTER,**      )
**INC., JOHN FLIEGEL, MD, WILLIAM B.**      )
**WEIL, MD,**                               )
                                            )
      Defendants.                         )

### MEMORANDUM OPINION AND ORDER

Defendant the National Pediculosis Association, Inc. ("NPA") has brought a motion to dismiss the complaint brought by plaintiff Morton Grove Pharmaceuticals, Inc., ("MGP") for failure to state a claim under FED. R. CIV. P. 12(b)(6). For the following reasons, the motion to dismiss is granted in part and denied in part.

I.

MGP is a pharmaceutical company that manufactures Lindane Lotion and Lindane Shampoo ("collectively Lindane"), which are FDA-approved medications for the treatment of lice and scabies. These products are named after their active ingredient – lindane.[1] Presently, MGP is the only United States manufacturer and distributor of Lindane. (Compl. at ¶¶ 1, 4.)

---

[1] In order to distinguish MGP's "Lindane" products from the ingredient, the former is capitalized throughout this Memorandum Opinion and Order except when quoting the complaint.

NPA is a non-profit, tax exempt organization "dedicated to protecting children from the misuse and abuse of potentially harmful lice and scabies pesticidal treatments." (Compl. at ¶ 2.) NPA sells the LiceMeister comb, which the complaint alleges is a competing product of Lindane's.

MGP has filed claims for a violation of the Lanham Act, 15 U.S.C. ¶ 1125(a) (Count I); defamation (Count II); trade disparagement (Count III); and violations of the Illinois Uniform Deceptive Trade Practices Act ("UPTPA"), 815 ILCS 510/2 *et. seq.* (Count IV) against NPA based on alleged false statements made by NPA.

## II.

In assessing defendant's motion to dismiss under FED. R. CIV. P. 12(b)(6), I must accept all well-pleaded facts in the complaint as true. *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005). Documents attached to the complaint are considered part of the complaint. *Id.* (citing FED. R. CIV. P. 10(c)). I must view the allegations in the light most favorable to plaintiff. *Id.* However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. - -, 127 S. Ct. 1955, 1965 (May 21, 2007).

## A. Count I: Lanham Act

Defendant moves to dismiss the Lanham Act ("the Act") claim on the grounds that MGP lacks standing to sue under the Act and that NPA's statements are not advertisements. "To establish a claim under the false or deceptive advertising prong of § 43(a) of the [] Act, a plaintiff must prove: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." *Hot Wax, Inc. v. Turtle Wax*, 191 F.3d 813, 819 (7th Cir. 1999) (citation omitted). In order to have standing to bring a false advertisement claim, a plaintiff must have "a discernible competitive injury." *L.S. Heath & Son, Inc. v. AT&T Info. Sys.*, Inc., 9 F.3d 561, 575 (7th Cir. 1993); *Gail Green Licensing & Design Ltd. v. Accord, Inc.*, No. 05 C 5303, 2006 WL 2873202, at *5 (N.D. Ill. Oct. 5, 2006) (St. Eve, J.). A party must have "'a reasonable interest to be protected against conduct violating the Act.'" *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 438 (7th Cir. 1999)

3

(quoting *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989)).

In this case, the complaint alleges that the parties' products, Lindane and LiceMeister, are in competition. (*See* Compl. at ¶¶ 2, 23, 30, 32.) Although NPA may be a non-profit organization, the complaint does allege that LiceMeister accounted for 97% of NPA's revenues in 2003 and that it has profited from the sales of such a product. (Compl. at ¶¶ 2, 10.) Meanwhile, "[a]s a result of [d]efendant's[sic] statements, Lindane sales have decreased approximately 23%, with a total loss of more than $9.3 million between January and November 2006." (Compl. at ¶ 37.) Taken as true, these allegations sufficiently set forth MGP's alleged discernable competitive injury. Accordingly, on the face of the complaint, MGP has standing under the Act.

Similarly, the complaint alleges that "NPA has launched an attack campaign against Lindane in the hopes that it can increase sales of the LiceMeister[] comb" and that this is a "for-profit" campaign. (Compl. at ¶ 23.) Some of the identified statements forming the basis of MGP's claims specifically promote LiceMeister as a product. (*See* Compl. at ¶ 32; Exh. A.) Defendant takes issue with whether this is "mere puffery" as opposed to advertisement; taken in the best light to plaintiff, however, the complaint sufficiently sets forth that some of NPA's statements are

4

commercial advertisement. Accordingly, the motion to dismiss count I is denied.

## B. Count II: Defamation

Defendant next argues that plaintiff has failed to state a claim for defamation. Under Illinois law, a statement is considered defamatory if it "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegal v. Heftel Broad. Corp.*, 154 Ill.2d 1, 10, 607 N.E.2d 201, 206 (Ill. 1992) (citation omitted). To establish a claim of defamation under Illinois law a plaintiff must show (1) the defendant made a false statement concerning the plaintiff; (2) there was an unprivileged publication of the defamatory statement to a third party by defendant; and (3) the plaintiff was damaged. *Dubinski v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 323, 708 N.E.2d 441, 446-47 (Ill. App. Ct. 1999) (citation omitted). An Illinois defamation action can either state a claim for defamation *per se*, which involves statements so harmful to one's reputation that damages are presumed; or for defamation *per quod*, which involves statements requiring extrinsic facts to show their defamatory meaning. *Bryson v. News Am. Publ'ns*, Inc., 174 Ill.2d 77, 87, 672 N.E.2d 1207, 1214 (Ill. 1996).

1. Defamation *per se.*

For a statement to be defamatory *per se* in Illinois, it must first qualify under one of five categories:

> (1) statements imputing the commission of a crime; (2) statements imputing infection with a loathsome communicable disease; (3) statements imputing an inability to perform or want of integrity in performing employment duties; (4) statements imputing a lack of ability or that otherwise prejudice a party in his or her profession or business; and (5) statements imputing adultery or fornication.

*Tuite v. Corbitt*, 224 Ill.2d 490, --, 866 N.E.2d 114, 121 (Ill. Dec. 21, 2006) (citations omitted). Second, the statement cannot be reasonably capable of an innocent construction, otherwise it is not actionable *per se*. *Id*. "Whether a statement is reasonably capable of an innocent construction is a question of law for the court to decide." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 727 (7th Cir. 2004) (citation omitted).

The alleged defamatory statements here are reasonably capable of an innocent construction. First, the statements at issue define lindane not as MGP's product, but as a chemical ingredient. (See Compl. at ¶ 23; Exh. A.) The statements in Exhibit A to the complaint provide:

> Lice and Scabies Lindane Formulas
> . . .
> Lindane is commonly used as a pediculicide in the USA. But the US [NPA] has maintained since 1983 that the toxicity of lindane outweighs any benefits it may have as a pediculicide. In many cases it is sold or prescribed without adequate warnings or guidance on use. . . . The lindane content in a solution of pediculicide, if consumed accidentally or deliberately, is significant.

6

The alternatives are the equally toxic malathion, or the relatively less toxic pyrethroid compounds.
. . .
Kwell: One shampoo product that is only available by prescription is Kwell®. . . . Head lice resistance to lindane, the active ingredient in Kwell, has been reported in many parts of the world, including the U.S.
. . .
Lindane is a prescription-only agent and was approved by the FDA in 1947.
. . .
Chemicals found in lindane formulated pediculicides and scabicides
Additional chemicals found in lindane formulated pediculicides and scabicides
. . .
Illinois Banned Lindane
. . .
[Illinois draft legislation] Amends the Illinois Food, Drug, and Cosmetic Act. Provides that no person shall sell, deliver, offer for sale, hold for sale, give away, use, or prescribe any product used for the treatment of lice or scabies in human beings that contains the pesticide chemical lindane.
New York Follows California to Ban Prescription Pesticide Lindane for Lice and Scabies
NY State proposes legislation banning the sale, use, and prescription of lindane. Assemblyman [] introduces bill that would prohibit any lice or scabies treatment product from containing the pesticide Lindane.
NY[] February 9, 2004 – Bill A008628 filed in the state of New York proposes to amend the public health law to ban the sale, use, and prescription of any product containing the substance commonly known as lindane, used for the treatment of lice or scabies in humans, from containing the pesticide.
The provision states, "Lindane is the working ingredient in over 2 million prescriptions for shampoos and creams meant to control head lice and scabies and that these prescriptions are issued to children, [etc.]" . . .
Also included is reference to lindane as a man made pesticide that has been categorized by the U.S. [EPA] as a persistent, bioaccumulative and toxic pollutant, meaning that it lingers for a long period in the environment, moves up the food chain and is highly toxic to human and wildlife. . . .
. . .
What is Lindane Anyway?

> For starters it is consistently ranked among the top chemicals of concern by the Agency for Toxic Substances and Disease Registry. By any other name, lindane is the 99% pure gamma isomer of hexachlorocyclohexane. It was introduced as a pediculicide and scabicide in 1952 as Kwell by Reed and Carnrick. The Pharmaceutical Manufacturing Encyclopedia describes the manufacturing process of lindane as one in which chlorine gas is gradually passed into 660 part of benzene (a known carcinogen) until 890 parts of the gas has been absorbed.
>
> . . .
>
> The United States is one of very few industrialized countries still using lindane in agriculture and for lice control.
>
> . . .
>
> Lindane is a persistent, bioaccumulative, and toxic organochlorine insecticide.
>
> . . .
>
> Lindane is highly persistent and travels long distances via atmospheric and oceanic currents. In fact, lindane, with its isomers, is the most abundant pesticide in Arctic air and water.
>
> . . .
>
> Lindane is a colorless solid with a musty odor. It is an organochlorine insecticide.

(Id.) (emphasis omitted). Such references to lindane as a chemical ingredient are found throughout Exhibit A to the complaint.

Moreover, none of the alleged defamatory statements refer to MGP at all, much less as the manufacturer of a lindane-based product. The only name-brand lindane-based product identified by name is Kwell, which is not MGP's product. Accordingly, on the face of the complaint it is clear that the statements can be reasonably read as referring to the chemical lindane and not to MGP's product.

8

Plaintiff does not dispute that the statements identified in the complaint do not refer to MGP. Instead, plaintiff argues that defendant's statements, in context, "clearly intended and unmistakably conveyed a defamatory meaning." *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 580, 852 N.E.2d 825, 839 (Ill. 2006). This argument is not supported by the language in the complaint. As described, the context of the statements serves only to reaffirm the existence of an innocent construction. Plaintiff does not point to any "context" which suggests the contrary. Moreover, because the statements are silent with respect to MGP, plaintiff necessarily relies on an extrinsic fact, *i.e.* that it has been the only United States distributor of the product Lindane for the last four years, in order to argue against an innocent construction. This is not permitted in order to state a claim for defamation *per se. See Bryson*, 174 Ill.2d at 87, 672 N.E.2d at 1214; *Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d 388, 390, 652 N.E.2d 1077, 1080 (Ill. App. Ct. 1995) ("Because plaintiff relies on facts outside the commentary to show that it refers to plaintiff, the commentary is not defamatory *per se*.")

Accordingly, the statements identified in the complaint are reasonably capable of an innocent construction and are not actionable *per se.*

9

2. Defamation *per quod*.

A cause of action for defamation *per quod* may be brought under two circumstances. First, a *per quod* claim is appropriate where the defamatory character of the statement is not apparent on its face, and resorting to extrinsic circumstances is necessary to demonstrate its injurious meaning. "To pursue a *per quod* action in such circumstances, a plaintiff must plead and prove extrinsic facts to explain the defamatory meaning of the statement." *Bryson*, 174 Ill.2d at 103, 672 N.E.2d at 1221 (citation omitted). A plaintiff must also plead special damages in order to state a claim under Illinois law, *see id.*, and comply with the heightened pleading standard of FED. R. CIV. P. 9(g), which requires special damages be specifically stated. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003) (citations omitted). "[A]n allegation of special damages is sufficient when it notifies the defendant of the nature of the claimed damages even though it does not delineate them with as great precision as might be possible or desirable." *Cont'l Nut Co. v. Robert L. Berner Co.*, 345 F.2d 395, 397 (7th Cir. 1965) (quotation omitted).

Plaintiff first moves to dismiss defendant's *per quod* claim on the ground that it did not plead special damages. The complaint does allege, however, that "[a]s a result of [d]efendants' statements, Lindane sales have decreased approximately 23%, with a total loss of more than $9.3 million between January and November

10

2006." (Compl. at ¶ 37.) This satisfies the pleading requirements under Rule 9(g) and Illinois defamation law. *See Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, No. 00 CV 1164, 2003 WL 259142, at *4-7 (N.D. Ill. Feb. 4, 2003) (Leinenweber, J.) (collecting Illinois and federal cases). While defendant is correct that this allegation includes the statements made by other defendants that have been dismissed from this case, for purposes of Rule 9(g) this is sufficient. *See Action Repair, Inc. v. Am. Broad. Cos.*, 776 F.2d 143, 150 (7th Cir. 1985) ("an estimation of final total dollar amounts lost is unnecessary"); *Continental Nut*, 345 F.2d at 397 (figures of gross sales before and after alleged defamatory public were sufficient under Rule 9(g)).

Defendant also moves to dismiss on the ground that MGP's extrinsic facts are insufficient. The complaint plainly provides that MGP is the only United States "manufacturer and distributor of Lindane [Lotion and Shampoo]." (Compl. at ¶¶ 1, 4.) Although NPA disputes this allegation, I must take it as true; therefore this argument is unavailing because a reader may conclude the statements are about MGP's product. NPA also argues that the statement's reference to Kwell, another lindane-based lice treatment identified by name on NPA's website, defeats the adequacy of MGP's allegations. Regardless of whether the NPA website specifically identifies another lindane-based product, in light of the complaint's allegation that MGP is presently the only manufacturer

11

and distributor of Lindane Lotion and Shampoo, the complaint manages to state a claim for defamation *per quod* based on extrinsic facts.

Next, defendant moves to dismiss on the ground that the statements at issue are protected under Illinois law and the First Amendment. "Under Illinois law, [] a statement is not actionable if it is an opinion relating to an individual's acts rather than the individual, the listener can perceive a factual basis for the statements and draw his or her own conclusions, and the statement relates to a matter of public concern." *McDonagh v. Bergan*, No. 03 C 1465, 2003 WL 21798735, at *2 (N.D. Ill. July 25, 2003) (Moran, J.) (citation omitted). However, factually misleading statements are not protected. *Id*. at *3; *Solaia*, 221 Ill. 2d at 581, 852 N.E.2d at 840 ("If a statement is factual, and it is false, it is actionable."). Here, the complaint alleges that the statements are factually misleading; therefore on the face of the complaint, plaintiff's claims are not barred under Illinois law or by the First Amendment.

Finally, defendant argues (1) that its statements are protected by a qualified privilege, and (2) plaintiffs have failed to plead actual malice. Illinois law protects "honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information." *Kuwik v. Starmark Star Mktg. & Admin*., Inc., 156 Ill.2d 16, 24, 619

N.E.2d 129, 133 (1993) (citation omitted). A qualified privilege operates as an affirmative defense. *See Babb v. Minder*, 806 F.2d 749, 753 (7th Cir. 1986); *Goldstein v. Kinney Shoe Corp.*, 931 F.Supp. 595, 598 (N.D. Ill. 1996). "A court must determine as a matter of law and general policy whether the occasion created a recognized duty or interest that makes the communication privileged." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (quotation omitted). A complaint need not anticipate or plead around affirmative defenses. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004); *see also Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1285 (N.D. Ill. 1996).

"Once the court decides that a qualified privilege exists, the plaintiff has the burden of showing that the defendant abused and lost the privilege." *Babb*, 806 F.2d at 753. An abuse of the privilege occurs when the defendant acts with "a direct intention to injure another, or a reckless disregard of the defamed party's rights and of the consequences that may result to him." *Kuwik*, 156 Ill. 2d at 30, 619 N.E.2d at 135 (quotation and alterations omitted). This is a factual question. *Id*. Similarly, a statement is made with actual malice when it is made with knowledge that it is false or with reckless disregard to whether it is false. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

13

In this case, even assuming the allegations in the complaint unequivocally established that the statements were privileged, the complaint alleges the requisite intent requirement to plead an abuse of the privilege and actual malice. The complaint pleads that "[d]espite this well-documented scientific, medical and regulatory history, [d]efendants have launched an attack campaign on Lindane. Defendants swap agricultural and pharmaceutical research, selectively quoting and/or misstating findings from studies relating to the agricultural use of lindane, and widely disseminate false, misleading, and defamatory statements about the safety profile and effectiveness of Lindane." (Compl. at ¶ 8.) The complaint also alleges that when defendants "published and communicated these statements and refused to retract them, they did so negligently or intentionally." (Compl. at ¶ 55.) In light of these allegations, defendant's arguments fail.

Accordingly, to the extent count II states a claim for defamation *per quod*, the motion to dismiss is denied.

C. Counts III and IV: Trade Disparagement and Deceptive Trade Practices.

Defendant moves to dismiss count II for trade disparagement and count III, which is brought under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1 *et. seq.*, on the same grounds. Both claims are subject to the same analysis: in order to state a claim for trade disparagement and under the UDTPA a plaintiff must allege that defendant published untrue or

14

misleading statements that disparaged the plaintiff's goods or services. *See Am. Wheel & Eng'g Co., Inc. v. Dana Molded Prods., Inc.*, 132 Ill. App. 3d 205, 211, 476 N.E.2d 1291, 1295-96 (Ill. App. Ct. 1985) (UDTPA "substantially embodies the common law tort of commercial disparagement"); *McDonagh*, 2003 WL 21798735, at *4. As discussed in addressing plaintiff's defamation *per quod* claim, the complaint here plainly alleges that defendant published untrue and misleading statements that disparage MGP's product. Defendant argues that the statements at issue are not "of and concerning" MGP. The complaint alleges the contrary when it provides that MGP has been the sole manufacturer and distributor of lindane-based products in the United States in the past four years. Taken as true and in the best light to plaintiff, these allegations state a claim for trade disparagement and under the UDTPA.

### III.

For the foregoing reasons, defendant's motion is granted in part and denied in part. To the extent that count II states a claim for defamation *per se*, it is dismissed.

**ENTER ORDER:**

_____
     **Elaine E. Bucklo**
   United States District Judge

Dated: June 18, 2007