**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**


| | |
|---|---|
| **MORTON GROVE PHARMACEUTICALS, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06 C 3815 |
| ) | |
| **THE NATIONAL PEDICULOSIS** ) | |
| **ASSOCIATION, INC., ECOLOGY CENTER,** ) | |
| **INC., MD, WILLIAM B. WEIL, MD,** ) | |
| ) | |
| Defendants. ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendants Ecology Center, Inc. ("the Center") and William B.
Weil, MD ("Weil") have brought a motion to dismiss counts II, III
and IV of the second amended complaint filed by plaintiff Morton
Grove Pharmaceuticals, Inc., ("MGP") for lack of personal
jurisdiction under FED. R. CIV. P. 12(b)(2), improper venue under
FED. R. CIV. P. 12(b)(3), or, in the alternative, to transfer the
case to the Eastern District of Michigan, and for failure to state
a claim under FED. R. CIV. P. 12(b)(6). For the following reasons,
the motion is granted in part and denied in part.

I.

The following is a brief review of facts already set forth in
*Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 485 F.
Supp. 2d 944 (N.D. Ill. May 3, 2007) ("*Morton Grove I*") and *Morton
Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 494 F. Supp.
2d 934 (N.D. Ill. June 18, 2007) ("*Morton Grove II*"). MGP, a

Delaware corporation, is a pharmaceutical company with its principal place of business in Morton Grove, Illinois. MGP manufactures Lindane Lotion and Lindane Shampoo ("collectively Lindane"), which are FDA-approved medications for the treatment of lice and scabies. These products are named after their active ingredient – lindane.[1] Presently, MGP is the only United States manufacturer and distributor of Lindane.

The Center is a non-profit corporation in Michigan. The Center's sole place of business is Ann Arbor, Michigan and has never maintained offices, registered agents or employees in Illinois. Weil is a physician licensed to practice in the field of pediatric medicine in Michigan. Weil is not licensed or alleged to have practiced medicine in Illinois and resides in Michigan.

MGP has filed claims for defamation (Count II), trade disparagement (Count III), and violations of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 (Count IV) against defendants. The second amended complaint specifically alleges that the Center and Weil engaged in a false, misleading and defamatory attack campaign on MGP and its product, Lindane. (Sec. Am. Compl. at ¶¶ 8, 32.) As a result, MGP is alleged to have suffered a decline in the sale of Lindane and reputational injury. (Id. at ¶ 36.) With regard to jurisdiction, the complaint alleges the Center "actively

---

[1]In order to distinguish MGP's "Lindane" products from the ingredient, the former is capitalized through this Memorandum Opinion and Order except when quoting MGP's complaints.

solicits donors by mail and distributes 'fact sheets' and 'newsletters' . . . in Illinois;" "has raised money from eleven Illinois residents since December 2003;" "and has spent $2,900 in business and travel expenses in Illinois since February 2004." (Id. at ¶ 11.)

## II.

On a motion to dismiss for lack of personal jurisdiction, I read the complaint liberally and draw all reasonable inferences in favor of the plaintiff. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). Where conflicting evidence is presented, I resolve factual disputes in the plaintiff's favor. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997); *Rotec Indus., Inc., v. Aecon Group, Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006). The plaintiff has the burden of demonstrating that this court has personal jurisdiction over the defendant. *RAR*, 107 F.3d at 1276; *Rotec Indus.*, 436 F. Supp. 2d at 933. When ruling on a motion to dismiss based on the submission of written materials, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

I have previously held I do not have general jurisdiction over defendants and, therefore, must only determine whether I have specific jurisdiction in light of the allegations in the second amended complaint. Specific jurisdiction is jurisdiction that

arises out of or relates to the defendant's contacts with the forum. *RAR*, 107 F.3d at 1277 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Minimum contacts are established for purposes of specific jurisdiction when the defendant's contacts with the forum state demonstrate that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, such that the defendant could reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *RAR*, 107 F.3d at 1277 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)). Under the Due Process Clause of the Fourteenth Amendment, a defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940)) (further citations omitted); *Hyatt Int'l*, 302 F.3d at 716.

In support of the motion to dismiss, Weil has submitted an affidavit in which he states (1) he did not participate in the preparation or mailing of the April 2006 newsletter (which is the only allegedly defamatory mailing which contains his name) and (2) he was unaware it was going to be sent to any Illinois residents. Although Weil's first assertion arguably is contradicted by the

4

April 2006 newsletter itself, MGP has not set forth any evidence to contradict the second. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003) ("[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction."). If Weil was not aware the letter was to be sent into Illinois, he did not purposefully avail himself in Illinois. *See Burger King*, 471 U.S. at 475 ("This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person.") (quotations omitted); *see also Nelson v. Bulso*, 149 F.3d 701, 704 (7th Cir. 1998); *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 297 F. Supp. 2d 1154, 1165-66 (W.D. Wis. 2004). Accordingly, the second amended complaint is dismissed with respect to Weil for lack of personal jurisdiction.

In arguing against specific jurisdiction, the Center points out that although it did send two sets of allegedly defamatory newsletters in April and May of 2006 to Illinois residents, the contents of these newsletters and the fact that they sent the newsletters to fewer Illinois residents than Michigan residents weighs against a finding of specific jurisdiction. In support, the Center submits an affidavit by a Center employee attesting that the

April and May 2006 newsletters were directed to Michigan residents. The affidavit and the Center do not dispute that the newsletters were sent to some Illinois residents, but argue that the small number of newsletters sent into Illinois in relation to the number sent in Michigan is inconsistent with purposeful availment. Finally, the Center argues that it was not aware of MGP as the manufacturer of the Lindane products and therefore was not targeting an Illinois resident.

A tortious act is not committed in Illinois merely because defendants allegedly caused MGP reputational and economic injury within the state; MGP must show that the tort occurred in the state of Illinois in some fashion. *See Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (tort of interference with prospective economic advantage by making false claims of copyright infringement was not complete until Janmark's customer canceled the order in Illinois, therefore the injury and tort occurred in Illinois)*; Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship*, 34 F.3d 410, 412 (7th Cir. 1994) (finding Maryland-based franchise subject to personal jurisdiction in Indiana because defendant entered Indiana through television broadcasts in allegedly infringing on plaintiff's intellectual property rights). Here, MGP alleges that the Center issued false, misleading and defamatory statements to Illinois residents. Defendant does not dispute that it intentionally mailed these letters to Illinois

residents at their Illinois addresses.  This is enough for specific jurisdiction, for the Center - through these newsletters - directed the allegedly improper statements to Illinois residents in Illinois, thereby committing a tort and causing injury within Illinois.  MGP would not have a defamation claim, for example, if the Center had printed the newsletters and never distributed them to anyone.  *See Dubinski v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 323, 708 N.E.2d 441, 446-47 (Ill. App. Ct. 1999) (in order to establish a claim for defamation, the defamatory statement must be published *to a third party* by defendant).[2]  Whether defendant was aware that MGP was the manufacturer of Lindane or not is inconsequential in light of the fact that it allegedly defamed MGP, through its product, within state lines.  *See Janmark*, 132 F.3d at 1202*; Indianapolis Colts,* 34 F.3d at 412*; see also Nelson*, 149 F.3d at 704; *Peregrine Fin. Group, Inc. v. Green*, No. 01 C 2948, 2001 WL 1548965, at *2-3 (N.D. Ill. Sept. 5, 2001) (Gettleman, J.) (applying *Janmark*). Accordingly, I find I have specific jurisdiction over the Center.

III.

The Center also moves to dismiss for improper venue pursuant to FED. R. CIV. P. 12(b)(3).  When considering a Rule 12(b)(3)

---

[2]Defendant concedes as much in its opening brief.  *See* Def. Op. Br. at 17 ("[T]he accrual date [for a defamation claim] is when the allegedly defamatory statements are published to a third party.").

motion, I must take all allegations in the complaint as true (unless contradicted by affidavit), draw all reasonable inferences in favor of plaintiff, and may examine facts outside the complaint. *Rotec Indus.,* 436 F. Supp. 2d at 933. Plaintiff bears the burden of establishing venue is proper. *Id.*

In diversity cases,[3] venue is determined in accordance with the requirements of 28 U.S.C. § 1391(a), which provides venue is proper in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . , (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*Id.* Under § 1391(a)(2), "[t]he test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *Peregrine Fin. Group,* 2001 WL 1548965, at *4 (quoting *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998)). MGP argues that venue is proper because a "substantial part of the events or omissions giving rise to the claim" occurred in this district. Specifically, the second amended complaint alleges the

---

[3]Although MGP asserts a Lanham Act claim against the National Pediculosis Association ("NPA"), it does not do so against the Center.

defamatory statements were disseminated in Illinois to Illinois residents and that MGP suffered economic and reputational injury in Illinois. The Center does not dispute either point, but argues that the newsletters were primarily intended for Michigan residents, both in content and distribution, and therefore the "substantial part" of the events giving rise to MGP's claims did not occur in Illinois but in Michigan.

Economic and reputational injury, in conjunction with other activities such as the dissemination of allegedly defamatory newsletters within the district qualify as substantial parts of the events giving rise to MGP's claim. *See, e.g.*, *Dobrick-Peirce v. Open Options, Inc.*, No. 2:05CV1451, 2006 WL 2089960, at *5-6 (W.D. Pa. July 25, 2006); *Santa's Best Craft, LLC v. Janning*, No. 02 C 9529, 2003 WL 21504522, at *2 (N.D. Ill. June 30, 2003) (Gettleman, J.) (citing *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 915-16 (7th Cir. 1995)); *DaimlerChrysler Corp. v. Askinazi*, No. CIV.A. 99-5581, 2000 WL 822449, at *6 (E.D. Pa. June 26, 2000); *Miracle v. N.Y.P. Holdings, Inc.*, 87 F. Supp. 2d 1060, 1072-73 (D. Haw. 2000); *Comaford v. Wired USA, Ltd.*, No. 94 C 2615, 1995 WL 324564, at *3 (N.D. Ill. May 26, 1995) (Manning, J.); *Manion v. Lima Mem'l Hosp.*, No. 92-5452, 1992 WL 368158, at *2 (E.D. Pa. Dec. 3, 1992); *Wachtel v. Storm*, 796 F. Supp. 114, 116 (S.D.N.Y. 1992). Dissemination of the allegedly defamatory newsletters is a critical element of MGP's defamation claim under Illinois law. *See*

*Dubinski*, 303 Ill. App. 3d at 323, 708 N.E.2d at 446-47. Accordingly, the motion to dismiss for improper venue is denied.

IV.

Next, the Center moves to transfer venue to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). Transfer is appropriate under § 1404(a) where (1) venue is proper in the transferor court; (2) venue is proper in the transferee district; and (3) the transfer will serve the convenience of the parties and witnesses as well as the interests of justice. The parties do not dispute venue is proper in Michigan, the purported transferee district, and I have already determined this district is a proper venue, therefore the critical inquiry is whether the third prong weighs in favor of transfer.

In determining whether a forum is more convenient and whether a transfer would be in the interest of justice, I must consider the private interests of the parties as well as the public interest of the court. *N. Shore Gas Co. v. Salomon, Inc.*, 896 F. Supp. 786, 791 (N.D. Ill. 1995). The factors relevant to the parties' private interests include (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses. *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 835 (N.D. Ill. 2004); *Coll. Craft Cos., Ltd. v. Perry*, 889 F. Supp. 1052, 1054 (N.D. Ill. 1995). The factors

relevant to the public interest of the court include the court's familiarity with the applicable law and concerns relating to the efficient administration of justice. *Id*. at 1056. The burden is on the moving party to demonstrate that the balance of the factors weighs heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another. *Fink v. Declassis*, 738 F. Supp. 1195, 1198 (N.D. Ill. 1990) (citation omitted).

### A. Convenience of Parties

#### 1. Plaintiff's Choice of Forum and Situs of Material Events

A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *In re Nat'l Presto Indus., Inc*., 347 F.3d 662, 663-64 (7th Cir. 2003) (citations omitted). A plaintiff's choice of forum is afforded less deference, however, when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events. *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (citation omitted).

In this case, MGP's choice of forum is its home forum. Defendant argues, however, that the location of material events

11

makes the Eastern District of Michigan the better forum. In support, the Center stresses the same arguments it made it moving to dismiss for improper venue and which I have already rejected in finding that a substantial part of the events giving rise to the claim occurred within this district. Accordingly, I find plaintiff's choice of forum is entitled to substantial weight. *See, e.g., Santa's Best Craft,* 2003 WL 21504522, at *3 ("Given that a substantial portion of the events giving rise to the claim occurred in this district, the court concludes that plaintiff's choice of forum is entitled to substantial weight."). This weighs against transfer.

## 2. Convenience of the Parties and Witnesses

Other factors I must consider are the convenience of the parties and witnesses. With respect to the convenience of the parties factor, each party here resides in the district which they claim is more convenient and will undoubtedly conduct discovery in both districts. Accordingly, this factor is a draw.

I must also consider the convenience of potential witnesses, looking beyond the number of witnesses to be called and examining the nature and quality of the witnesses' testimony with respect to the issues in the case. *Vandeveld*, 877 F. Supp. at 1168. The convenience of party witnesses is less relevant than the convenience of non-party witnesses, since party witnesses normally must appear voluntarily. *See, e.g., First Nat'l Bank v. El Camino*

*Res., Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006) (citation omitted). "The convenience of the witnesses is often the most important factor in determining whether to grant a motion to transfer." *Id*.

With respect to this factor, the critical inquiry will concern non-party witnesses, for both parties will have their party witnesses located in their respective districts and such witnesses are presumed to appear voluntarily. *Id*. The Center sets forth that it intends to call numerous Michigan residents as part of its case, including physicians who have worked on creating the newsletter with the Center and recipients of the newsletter such as Michigan state legislators and other physicians. MGP contends that it will call non-party witnesses located outside of the district, specifically in Georgia, as a part of its case. The fact that MGP's purported non-party witnesses do not reside within this district means that it is equally convenient (or inconvenient) for them to travel to Illinois or Michigan from Georgia. MGP fails to identify any other witness it seeks to call from within this district. Accordingly, this factor weighs in favor of transfer.

### 3. Access to Sources of Proof

Courts also consider the "relative ease of access to sources of proof." *See, e.g.*, *Chicago, Rock Island & Pac. R.R. Co.*, 220 F.2d at 303. Both parties acknowledge that sources of proof are located in both districts. On one hand, MGP contends there will be

13

a greater amount of written discovery materials located within this district due to the need to compute damages. MGP does not provide any affidavits or any other detail to this effect. Meanwhile, the Center contends the bulk of evidence for its case will be located in Michigan, but fails to identify any voluminous written discovery which would take place within that district - instead focusing only on witnesses. Although "[t]he location of a party's documents and records is usually not a very persuasive reason to transfer a case," *Event News Network, Inc. v. Thill*, No. 05 C 2972, 2005 WL 2978711, at *5 (N.D. Ill. Nov. 2, 2005) (Conlon, J.), to the extent I must consider this factor it weighs slightly against transfer.

## B. Interests of Justice

In addition to considering the parties' private interests, I must consider the public interests of the court. Factors relevant to this inquiry include the effect of transfer on the efficient administration of justice, including the likelihood of a speedy trial, and the transferor and transferee court's familiarity with the applicable law. *Coll. Craft Cos.*, 889 F. Supp. at 1056; *see also Schwarz*, 317 F. Supp. 2d at 837. This inquiry mainly focuses on administrative concerns rather than the merits of the underlying dispute. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986); *Event News Network,* 2005 WL 2978711, at *5; *Schwarz*, 317 F. Supp 2d at 837.

With respect to the efficient administration of justice, the 2006 Federal Court Management Statistics indicate that the median filing to trial time is comparable in both districts. Therefore, this factor does not weigh in favor of transfer.

MGP also asserts that its case against NPA will continue to proceed before me and therefore judicial resources will be conserved by denying transfer. I agree that even after severing the case against NPA, it may prove more expeditious to have both cases proceed in the same district, particularly to the extent that MGP's cases against NPA and the Center may have any overlapping questions of law or fact. Similarly, a court in the Northern District of Illinois is generally more familiar with Illinois law than courts in Michigan. *See Event News Network*, 2005 WL 2978711, at *7; *Schwarz*, 317 F. Supp. 2d at 837. This further weighs against transfer.

Finally, the Center argues Michigan has a stronger relation to the issues in this case in light of the Center's local ties, the fact that most of the mailing took place in Michigan, and that MGP requests injunctive relief in the form of an order enjoining the Center from further defaming MGP. While I take these points into consideration, I believe that MGP's status as an Illinois resident also confers Illinois with an interest in the case, and while the majority of the mailings may have been distributed in Michigan, MGP would suffer its economic injury in Illinois. Accordingly, I do

not think these considerations outweigh the fact that the effect of transfer on the efficient administration of justice and the transferor and transferee courts' respective degrees of familiarity with the applicable law weigh against transfer.

After balancing these factors, I find that defendant has not shown that the Eastern District of Michigan is clearly more convenient. In particular, the plaintiff's choice of forum and interests of justice weigh against transfer, while only the convenience of witnesses weighs in favor of transfer. *See Coffey*, 796 F.2d at 220-21 (the interest of justice may be determinative even when convenience of witnesses might call for different result); *Schwarz*, 317 F. Supp. 2d at 837. Accordingly, the motion to transfer is denied.

## IV.

The Center's remaining motion is under Fed. R. Civ. P. 12(b)(6). In assessing defendant's motion to dismiss under FED. R. CIV. P. 12(b)(6), I must accept all well-pleaded facts in the complaint as true. *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005). I must view the allegations in the light most favorable to plaintiff. *Id*. However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. - -, 127 S. Ct. 1955, 1965 (May 21, 2007); *E.E.O.C. v. Concentra Health Servs., Inc.*, - - F.3d - -, No. 06-3436, 2007 WL 2215764, at *2 (7th Cir. Aug. 3, 2007).

A.  Statute of Limitations

Defendant moves to dismiss counts II (defamation) and III (trade disparagement) of the second amended complaint on the ground that they are time barred.  Specifically, defendant points out that these counts are based on the newsletters sent to Illinois residents, which were added in the second amended complaint more than one year after they were published.  At the earliest, the newsletters are dated April 5, 2006 and May 9, 2006 and the second amended complaint was filed June 19, 2007.  In response, MGP argues these claims relate back to its 2006 pleadings.

Under Fed. R. Civ. P. 15(c), an amended pleading relates back when

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or (2) the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . .

*Id.*  "The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one."  *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006) (citations omitted); *Boatmen's Nat. Bank of Belleville v. Direct Lines, Inc.*, 167 Ill. 2d 88, 102, 656 N.E.2d 1101, 1107 (Ill. 1995) (quoting *Lopez v. Oyarzabal,* 180 Ill. App. 3d 132, 135, 535 N.E.2d 8 (Ill. App. Ct. 1989)) ("'[T]he

relation back of an amendment depend[s] on whether the original complaint furnished to the defendant all the information necessary for him to prepare a defense to the claim subsequently asserted in the amended complaint.'") (further citations omitted).

MGP's initial complaint repeatedly set forth that defendants "launched an attack campaign against Lindane medication," (compl. at ¶¶ 4, 17) and "widely disseminating false, misleading, and libelous statements about the safety profile and effectiveness of Lindane Lotion and Lindane Shampoo." (Id. at ¶¶ 4, 18.) The initial complaint identified specific statements made by defendants by stating they had "published *at least* the following false statements to third parties." (Id. at ¶¶ 19, 20, 21) (emphasis added). Similarly, the first amended complaint (filed on February 6, 2007) alleged that defendant "launched an attack campaign on Lindane. . . . swap[ping] agricultural and pharmaceutical research, selectively quoting and/or misstating findings from studies relating to the agricultural use of lindane, and widely disseminate[d] false, misleading, and defamatory statements about the safety profile and effectiveness of Lindane." (First Am. Compl. at ¶¶ 8, 33.) The first amended complaint specified that the alleged campaign by the Center "included the wide dissemination of false and misleading 'fact sheets,' newsletters, letter soliciting donations, and statements on the [] Center's website." (Id. at ¶ 33.)

Nothing in the language of the initial or first amended complaint precludes finding that the Center had sufficient notice of the nature and scope of MGP's claims for purposes of Rule 15(c). Unlike cases where distinct instances of defamation were not found to relate back to each other *(see Poth v. Paschen Contractors, Inc.*, No. 85 C 8499, 1987 WL 14604, at *2-3 (N.D. Ill. July 20, 1987) (Kocoras, J.) (highlighting portions of the complaint which identified specific instances of allegedly slanderous speech made on specific dates to specific individuals); *Wiener v. Superior Court*, 58 Cal. App. 3d 525, 527, 13 Cal. Rptr. 61, 62-63 (1976) (initial complaint alleged defendant caused libelous statements to be published on specific date in specific newspaper) *cited in Santamarina*, 466 F.3d at 573), MGP has alleged an attack "campaign" on the subject-matter of Lindane since its initial complaint. The newsletters fall squarely within the language of the initial and first amended complaints, arising out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. *See Santamarina,* 466 F.3d at 573-74 (finding relation back to initial complaint when there was identity of parties, claims, and "the same general set of facts [were] alleged"); *Muzikowski v. Paramount Pictures Corp.*, No. 01 C 6721, 2003 WL 22872117, at *4 (N.D. Ill. Dec. 3, 2003) (Kocoras, J.). This is consistent with the federal pleadings standard articulated in Fed. R. Civ. P. 8(a). *See, e.g., Airborne Beepers & Video, Inc.*

*v. AT&T Mobility LLC*, - - F.3d - -, No. 06-2949, 2007 WL 2406859, at *4 (7th Cir. Aug. 24, 2007) (discussing federal pleading standards post-*Bell Atlantic* and stressing "specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests") (quotations and alterations omitted); *see also Santamarina*, 466 F.3d at 573-74. Accordingly, I find counts II and III relate back to the earlier pleadings and are not time-barred.

Defendant also argues MGP has failed to state a claim in counts II and III for defamation *per quod*.[4] These arguments echo those made by NPA in its own motion to dismiss under Rule 12(b)(6) and which I have previously rejected. *See Morton Grove II*, 494 F. Supp. 2d at 941-42. First, although the statements identified in the complaint alleged to have been issued by the Center and NPA are not identical, the second amended complaint plainly alleges the statements made by the Center are factually misleading and thus not protected under Illinois law. *See McDonagh v. Bergan*, No. 03 C 1465, 2003 WL 21798735, at *3 (N.D. Ill. July 25, 2003) (Moran, J.) (citation omitted); *Solaia*, 221 Ill. 2d at 581, 852 N.E.2d at 840 *cited in Morton Grove II*, 494 F. Supp. 2d at 942. Second, the second amended complaint alleges the existence of extrinsic facts sufficient to state a claim for defamation *per quod*; in particular,

_____

[4]I have already held that MGP has failed to state a claim for defamation *per se. Morton Grove II*, 494 F. Supp. 2d at 941.

the complaint alleges MGP is "the only manufacturer and distributor of Lindane [Lotion and Shampoo]" in the United States. (Sec. Am. Compl. at ¶ 4.) Accordingly, the motion to dismiss counts II and III is denied.

Finally, the Center moves to dismiss count IV under the Illinois Deceptive Trade Practices Act ("IDTPA") on the grounds that MGP has failed to plead with particularity or sufficiently allege it is entitled to injunctive relief.

As preliminary matter, the Center erroneously asserts that claims under the IDTPA are categorically subject to a heightened pleading requirement under FED. R. CIV. P. 9(b). *See Int'l Star Registry of Illinois v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 991 n.10 (N.D. Ill. 2006); *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1233-34 (N.D. Ill. 2005); *Publ'ns Int'l, Ltd. v. Leapfrog Enters., Inc.*, No. 01 C 3876, 2002 WL 31426651, at *5-6 (N.D. Ill. Oct. 29, 2002) (Gettleman, J.). In fact, the allegations must sound in fraud in order to be subjected to the heightened pleading standard. *See Int'l Star Registry of Illinois*, 451 F. Supp. 2d at 991 n.10; *Nakajima All Co. Ltd. v. St. Vent. Corp.*, No. 00 C 6594, 2001 WL641415, at *6-7 (N.D. Ill. June 4, 2001) (Gettleman, J.).

In this case, the Center fails to argue that the allegations in the second amended complaint sound in fraud, instead simply asserting that the IDTPA prohibits the "creation of a likelihood of

public confusion or misunderstanding regarding the source, sponsorship or approval of another's goods or services" and "trade disparagement of another's goods, services or business." Because these actions do not necessarily sound in fraud, *see, e.g.*, *Int'l Star Registry of Illinois*, 451 F. Supp. 2d at 991 n.10; *Sotelo*, 384 F. Supp. 2d at 1233-34; *Publications Int'l, Ltd.*, 2002 WL 31426651, at *5-6, and defendant specifically fails to argue that they do, defendant has failed to show that Rule 9(b)'s heightened pleading standard applies.

Lastly, defendant's argument that MGP has failed to state a claim under the UDTPA for injunctive relief fails. First, "[a] plaintiff can state a claim under the UDTPA by alleging that defendant[] published untrue or misleading statements that disparaged the plaintiff's goods or services." *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 918 (N.D. Ill. 2007) (citations omitted). Plaintiff has done so here. Second, with respect to the relief sought, MGP incorporates paragraph 36 of the second amended complaint in describing the "specific economic harm" it has suffered as a result of the Center's alleged UDTPA violations. Paragraph 36 provides MGP has "incurred reputational injury to its business" in addition to lost past, present and future sales, that its products' have suffered from "diminished goodwill" and that the statements have "caused consumers and physicians to falsely question the safety and effectiveness of Lindane." When these

22

allegations are taken in the best light to plaintiff, they manage to state a claim for relief (necessarily injunctive relief) under the UDTPA because although mislabeled as "economic harms" they include irreparable harms which cannot be remedied at law. *See Gateway Eastern Ry. Co. v. Terminal R. R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("We have stated that showing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.") (citations omitted); *Abbot Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16, (7th Cir. 1992) (stating, in the context of examining the presumption of irreparable harm under the Lanham Act, "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill") (citation omitted).

V.

For the foregoing reasons, I find that this court lacks personal jurisdiction over Weil and grant his motion to dismiss under Fed. R. Civ. P. 12(b)(2). The Center's remaining motions are denied.

ENTER ORDER:

_____

**Elaine E. Bucklo**
United States District Judge

Dated: November 30, 2007

23